ALBERT PURCELL v. RICHMOND AND DANVILLE RAILROAD COMPANY.

*Common Carrier — Railroad — Contract — Tort — Damages — Negligence—Pleading—Jurisdiction.*

1. It is the duty of a common carrier to provide sufficient means of transportation for all freight and passengers which its business naturally brings to it, and an unusual occasion by which a greater demand upon it is temporarily made will not relieve it of the obligation if, by the use of reasonable foresight, it could have been provided for.

2. A person who has sustained injuries by reason of the failure of a railroad company to provide proper means of transportation or operate its trains as required by the statute (*The Code,* § 1963) may bring an action on contract, or in tort, independent of the statute.

3. If the tort is the result of simple negligence, damages will be restricted to such as are compensatory; but if it was willful, or committed with such circumstances as show gross negligence, punitive damages may be given.

4. Where the plaintiff alleged in his complaint and offered testimony tending to show that he purchased a ticket from defendant's agent at a regular station before the time advertised for the arrival and departure of its trains at that place, and was in readiness to get aboard, but the train ran by, making no effort to stop, although it had room in its cars for plaintiff: *Held* (1), the complaint does set forth a cause of action in tort, of which the Superior Court had jurisdiction ; and (2) the plaintiff was entitled to an instruction that, if the jury found the facts alleged to be true, he would be entitled to punitive damages, in the absence of sufficient excuse shown by the defendant.

CIVIL ACTION, tried at Fall Term, 1890, of ALAMANCE Superior Court, *MacRae, J.,* presiding.

PLAINTIFF'S APPEAL.

The material portions of the complaint are—

"That on the 21st day of September, 1889, the plaintiff purchased from defendant's agent at Haw River a ticket to

Burlington, and thereby the defendant contracted with the plaintiff to receive him on its passenger train as a passenger from Haw River station to Burlington station, and for the fare as paid as aforesaid; that said ticket specified that it was good for that day and train only, and was purchased for the regular passenger train due on its western trip at Haw River at an early hour in the morning of said 21st day of September, 1889; that the plaintiff received said ticket and went upon the platform at the depot at Haw River to the place where the defendant is accustomed to receive and discharge its passengers, just before the time published by the defendant for the arrival and departure of its regular passenger train, which is due and passes said depot about five o'clock every morning, and remained upon or near said platform until the said train did arrive, which occurred about six o'clock A. M.; that when the said train did arrive it made no stop at Haw River station at all, but ran by said station with great speed, not allowing any passengers to get upon it, and leaving the plaintiff standing and remaining at said depot, to his great disappointment, annoyance and damage, in the sum of $500, and hence he brings this suit. Wherefore, the plaintiff demands judgment for the sum of $500 damages and for the costs of this action."

The material parts of the answer are—

"That the train is composed of freight cars, a combination car, one end of which is used as a second-class car, one first-class car and a Pullman Sleeper; that this train seldom carries more than seven or eight passengers outside of the Pullman Sleeper; that on the morning of the 21st day of September, 1889, when this train reached Haw River it was crowded with passengers to its full capacity, and that it would have been unsafe to the passengers aboard and those desiring to get on at Haw River to have stopped and taken on those proposing to go to Burlington, which crowd, as defendant is informed and believes, amounted to near one hundred

persons; that the defendant was not apprised of this unexpected increase of passengers in time to provide necessary or adequate carriage for them."

Defendant denies that the plaintiff was damaged five hundred dollars, and says that it is informed and believes that the plaintiff was intending to go to Burlington to attend Robinson's circus, which gave an exhibition there that day, and that the only loss to plaintiff was the failure to see the circus; that the circus did not open until about two o'clock P. M., and was only four miles off, and the public highway, which at that season of the year was in the best condition, led from Haw River to Burlington, and the latter place could easily have been reached by said highway between the hours of five o'clock A. M and two o'clock P. M. by any ordinary pedestrian without inconvenience or loss.

Defendant further says, that the amount of damage recoverable under the circumstances set out in this answer, but which do not appear on the face of the complaint (if recoverable at all), are within the jurisdiction of a Justice of the Peace, and that this Court has no jurisdiction of this action.

There was evidence offered by each party tending to support their respective contentions.

The plaintiff asked the Court to charge the jury that if they believed that the defendant stopped its train at Mebane and received and discharged passengers, and also at Graham, and there received twelve or fifteen passengers and discharged two or three, and that there was room, standing or sitting, for fifty or sixty persons at the time the train passed Haw River, and that a part of the tickets were sold to persons at Haw River the evening before, and in due time to communicate with the officers of the company, then to run by, as is shown in this action, is such willful disregard of the rights of the plaintiff as would entitle him to recover punitive damages. This prayer was refused, and plaintiff excepted.

The Court instructed the jury that, upon the testimony, they would not be warranted in finding the defendant guilty of such a degree of negligence as indicated a reckless indifference to consequences, oppression, needless caprice, willfulness or other cause of aggravation as would entitle plaintiff to punitive damages. The measure of damages upon the admitted facts, or those proven, if the jury believed the testimony, would be the price paid for the ticket, fifteen cents, and the amount paid for another conveyance to Burlington, twenty-five cents.

. There was a verdict for plaintiff, assessing his damages at forty cents, and from the judgment thereon he appealed.

*Mr J. A. Long,* for plaintiff.
*Messrs. D. Schenck* and *F. H. Busbee,* for defendant.

CLARK, J.: *The Code,* § 1963, provides : "Every railroad corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodation for the transportation of all such passengers and property as shall within a reasonable time previous thereto be offered for transportation at the place of starting, and the junction of other railroads, and *at usual stopping places established for receiving and discharging way passengers* and freights for that train, and *shall take, transport* and discharge such passengers and property at, from and to such places on due payment of the freight or fare legally authorized therefor, and *shall be liable to the party aggrieved in an action for damages for any neglect or refusal in the premises.*" For a violation of such statutory duty the plaintiff might have sued in contract (*Hodges* v. *Railroad,* 105 N. C., 170), but he could elect to sue in tort for the injury and the breach of public duty (existing independent of the statute) by the willfulness or negli-

108—27

gence of defendant. Bishop Non-contract Law, §§ 73 and 74; Redfield on Carriers, § 422; *Tallon* v. *Great Western Railway*, 2 El. & El., 844. If the tort was committed by mere negligence of the defendant as simple carelessness or inadvertence, the plaintiff would be restricted to compensatory damages, and as no special damages were alleged and shown other than obtaining another conveyance, the measure of damages, as laid down by the Court, to-wit, the price of the ticket and of procuring such other conveyance—forty cents in all—would have been correct. But if the conduct of the defendant was willful, or showed such gross negligence as to indicate a wanton disregard of the rights of the plaintiff, he was entitled to recover punitive damages in addition.

Railroads are granted valuable franchises and privileges by virtue of the State's right of eminent domain. On their part they assume correlative obligations and duties to the public and become *quasi* public servants. They are not granted such great and unusual privileges to the sole end that they may be operated for the mere pecuniary benefit of the corporation, and at the arbitrary pleasure and will of their managers and employees. It is well recognized that they are subject to proper regulation, supervision and control by public authority, and that they owe duties to the individuals who may wish to ship goods or to travel over their lines. When the defendant advertised its schedule and the plaintiff bought a ticket and presented himself at the advertised time at a regular passenger station of the road, he had the right to be taken aboard the cars on their arrival at that point. In running its cars by the station without stopping the defendant committed a breach of public duty—a tort. If such breach was mere inadvertence or negligence, or was caused by an unforeseen number of passengers presenting themselves which rendered it unsafe to take a greater number aboard, and the company could not by reasonable diligence have increased the number of cars, then the plain-

tiff would be held to recover only the bare compensatory damages laid down. If, however, the defendant, having advertised for passengers for that train, by reasonable diligence could have ascertained that the number of cars was insufficient, and made no effort to supply the deficiency, but regardless of its duties and of the rights of those whom it had invited to leave their ordinary avocations and present themselves at its regular station for passage, ran its train by the station without stopping, or if there was room in the cars for fifty or sixty persons additional and the train passed by the station without taking on at least as many as it had accommodations for, then the defendant did display a gross and willful disregard of the rights of the plaintiff which entitled him to recover punitive damages. There was evidence to justify, if believed, the state of facts recited in plaintiff's prayer for instruction, and it was error to refuse to grant it. Should an excessive verdict have been found by the jury, the discretion rested with the trial judge to correct it; but it would be a denial of justice to permit a common carrier to exhibit such arbitrary and willful neglect of the duties it has assumed and such disregard of the rights of others. Yet such is the effect if, without adequate excuse, it should be allowed so to act with no other penalty than refunding the price of the ticket and the price paid for another conveyance, since the latter would be demanded in very few cases and only when the destination is at a short distance. The effect of such ruling would be to license the common carrier to furnish cars or not, and to stop at its regular stations or not, at its arbitrary pleasure and not as a duty required by law. The refunding the price of the ticket would amount in most cases to nothing, as the passenges would usually buy a ticket by the next train. Yet the inconvenience, annoyance and injustice to the traveling public by such detentions would be great, and difficult to estimate.

A case exactly in point is *Heirn* v. *M'Caughan*, 32 Miss., 1, where it is held that exemplary damages were recoverable against a common carrier (there a steamboat company) in an action of tort for violation of duty in willfully refusing to land its vessel and receive the plaintiff as a passenger according to its advertisement. In *The N. O. J. & G. N. Railroad* v. *Hurst*, 36 Miss., 660, which was a case somewhat similar, where the train ran by the regular station without stopping to put off (instead of to receive) a passenger, the Court affirm the case last cited, and say it is "the right of the jury in such cases to protect the public by punitive damages against the negligence, folly or wickedness which might otherwise convert these great public blessings into the most dangerous nuisances."

It is the duty of a common carrier, especially where it has a monopoly, to provide sufficient cars for the transportation of all passengers, as well as for the carriage of all freight, which its invitation naturally brings to it, as was held in *Branch* v. *Railroad*, 77 N. C., 347. Indeed, the identical facts of the present case are cited by Judge RODMAN as a hypothetical illustration in that opinion (p. 351).

No regard for its own profit or convenience will justify the corporation in having only sufficient cars for the ordinary amount of freight and travel, leaving the public to bear the inconvenience and loss when, on unusual occasions, the volume of business may swell beyond the average. Common carriers could not be held liable for an unforeseen and extraordinary rush of business not within reasonable calculation, but when the additional volume of travel or freight is such as with reasonable foresight could be expected, it is the duty of the company to have the extra cars furnished. With the modern facilities of telegraph and telephone the occasion of an unusual number of passengers or quantity of freight can be promptly notified and provided for. If this is not done it is gross and willful negligence, and the com-

pany should not be allowed to find its profit in a willful and reckless disregard of the rights of the public and of its own duties.

It may be that, on the whole testimony, the defendant could show sufficient matter of excuse, but the plaintiff was entitled to have the phase of the evidence set out in his prayer for instruction presented to the jury.   Taking that evidence to be true, nothing else appearing, he was entitled to recover punitive damages.

*Per Curiam.*                                      Error.

### DEFENDANT'S APPEAL.

When the complaint and answer were read the defendant demurred *ore tenus*, and moved for judgment because the complaint did not state facts sufficient for a cause of action, in that no amount was alleged to have been paid for a ticket, no amount claimed for transportation to destination, and no special damages claimed, and that no exemplary damages could be recovered for breach of contract.

Motion overruled.   Defendant excepted.

The defendant gave notice of a motion to dismiss for want of jurisdiction, which was reserved till after the evidence was in.

Upon the close of the evidence the defendant renewed its motion to dismiss for want of jurisdiction—

1 Because the complaint does not mention any amount of money demanded or other damages which plaintiff is entitled to recover in this form of action, in that it does not specify any amount paid for a ticket; that it does not claim any amount for a substituted conveyance; that it does not allege any special damages.

2. That the complaint, as explained by plaintiff's evidence, shows on its face that the Superior Court has no jurisdiction of this action.

Motion denied. Defendant excepted, and appealed from the judgment.

CLARK, J.: The ruling of the Court below was correct in both particulars. The defendant's demurrer and motion to dismiss were based upon the mistaken idea that the action was necessarily for breach of contract. It is true that the plaintiff might have elected to have sued in contract, and if so, he should set out the price paid for his ticket, and the measure of his recovery would have been the price paid for the same, the cost of procuring another mode of conveyance to his destination, and such other special damages, if alleged, as were the direct and necessary consequences of the breach of contract.

But it is also equally true that the plaintiff could have sued in tort (Bishop Non-contract Law, §§ 73, 74; Thompson on Carriers, 544; Redfield on Carriers, § 414), and it is clear that such was his intention here. The gravamen of his complaint is that he "went to the passenger depot just before the time published by the defendant for the arrival and departure of its regular passenger train, which is due and passes said depot about 5 o'clock every morning, and remained upon or near said platform until said train did arrive, which occurred about 6 o'clock A. M. That when said train did arrive, it made no stop at Haw River Station at all, but ran by said station with great speed, not allowing any passengers to get upon it, and leaving the plaintiff standing and remaining at said depot, to his great disappointment, annoyance and damage in the sum of five hundred dollars, and hence he brings this suit."

When a passenger, while traveling on the cars, is injured by negligence of the carrier, he can sue either for the breach of contract of safe carriage or in tort for the negligence. *Craker* v. *Railroad*, 36 Wis., 657, and the cases cited. And in a case where the passenger was carried past his destination,

it was held that the action would be deemed founded in tort, unless it plainly appeared that the breach of contract was the gravamen of the complaint; that "the action will be regarded in tort or contract having regard to the character of the remedy the facts indicate, and the most complete and ample redress which, upon the facts stated, the law can afford," and that the allegation of "the contract of carriage is a mere inducement to the action to show that the defendant was lawfully there," but that the point of grievance is the wrong done the plaintiff and the violation of public duty by the common carrier. *N. O., J. & G. N. Railroad* v. *Hurst*, 34 Miss., 661. A case exactly in point, however, is *Heirn* v. *M'Caughan*, 32 Miss., 1, in which it is held: "An action against a common carrier, for a failure to stop at a regular station and take on board a passenger, according to advertised schedule, is founded in *tort*, and not on a special contract, it being for a violation of a general duty to the public.

Even had the plaintiff alleged the price paid for the ticket (which was not necessary in the action for tort) it would not have been conclusive that the action was in contract, for the facts alleged in the complaint, taken as a whole, show that the plaintiff was not seeking to recover in contract for the pittance paid for his ticket, but for the wrong done him by the breach of public duty and the willful disregard of his rights by the defendant in not allowing him to get on the train at its regular depot, but "running its train by without stopping and leaving him standing and remaining at said depot, to his great disappointmeat, annoyance and damage in the sum of five hundred dollars."

It is clear that whatever merits the evidence might indicate, as a matter of pleading the plaintiff's action was in tort, that the Superior Court had jurisdiction, and that the complaint did not fail to state a cause of action, in that (as defendant demurred) the price of the ticket, special damages and other matter which would have been proper in an action

*ex contractu* were not alleged.    Indeed, the whole subject has
been so recently considered in *Bowers* v. *Railroad,* 107 N. C.,
721, that we might have contented ourselves with a bare ref-
erence to that case, in which MERRIMON, C. J., says : " Ob-
viously, these words were intended to allege more than a
simple breach of the contract — a tort—a tortious injury.
Granting that more appropriate terms for such purpose might
have been employed, still the Court can see the purpose
informally expressed, and, as it can, the pleading should be
upheld and the jurisdiction sustained."

Under the former system of practice the pleadings were
construed most strongly against the pleader, but now the
statute (*The Code,* § 269) requires them to be " liberally con-
strued with a view to substantial justice between the parties."

The case of *Hannah* v. *Railroad,* 87 N. C., 351, relied upon
by the defendant's counsel, is really, it seems to us, an
authority against him.    There the plaintiff alleged that he
had been wrongfully put off the cars after having bought
and paid for his ticket.    The Court held that it was an action
for tort, but that the plaintiff having died before judgment
the action abated as to the punitory damages for the techni-
cal assault (*The Code,* § 1491 [2]), and that treating it as an
action *ex contractu* to recover the price of the ticket the
amount stated was within the jurisdiction of a magistrate.
The demurrer to the jurisdiction and for failure to state a
cause of action in the present case is based entirely upon the
alleged insufficiency of the complaint, treating this as an
action on contract.    The measure of damages, treating it
as an action in tort, is considered in the plaintiff's appeal.

    *Per Curiam.*                                   No error.