STORY v. NORFOLK AND SOUTHERN RAILROAD COMPANY.

(Filed September 22, 1903.)

1. CARRIERS—*Passengers—Damages—The Code, sec. 1963.*

In an action for damages for refusal to allow a person with a ticket to board a train because he was intoxicated, evidence that he was on the train intoxicated at another time is not competent.

2. DAMAGES—*Exemplary—Punitive—Carriers—Passengers.*

In an action for damages for refusal to allow a person with a ticket to board a train because he was intoxicated, exemplary damages will be allowed if such refusal was made with malice, undue force, or insult.

3. EVIDENCE—*Damages—Exemplary Damages—Carriers.*

There is in this action for damages for refusal to allow a person to board a train sufficient evidence of insult or other aggravating circumstances to be submitted to the jury on the question of punitive damages.

4. CARRIERS—*Passengers—Evidence.*

In an action for damages for refusal to allow a person with a ticket to board a train, the trial court properly refused to instruct that the conductor, in refusing, might consider that the same person had given him trouble at other times.

ACTION by S. C. Story against the Norfolk and Southern Railroad Company, heard by Judge *H. R. Bryan* and a jury, at May Term, 1903, of the Superior Court of PERQUIMANS County. From a judgment for the plaintiff the defendant appealed.

*W. M. Bond, E. F. Aydlett* and *W. J. Leary,* for the plaintiff.
*Pruden & Pruden,* for the defendant.

STORY *v.* NORFOLK AND SOUTHERN RAILROAD COMPANY.

CLARK, C. J.   The plaintiff, having purchased a ticket home, presented himself at the gate 5th June, 1902, at Elizabeth City, when the conductor opened it at the arrival of the train about 10 A. M.   The conductor refused to permit him to enter.   The plaintiff testified that he put his hand on his breast and pushed him back, saying: "You cannot go"; that he told the conductor that he had his ticket, that his family was sick and he was sick; that the conductor replied: "You are drunk and cannot go"; that he was refused entrance to the cars and was compelled to walk home, ten miles; that he was sick and had to sit down on the end of the cross-ties to rest, and did not get home until about 12 o'clock at night; that his feelings were hurt, and he was worried and humiliated; that there were over 100 people in the depot; that he was not drunk and did not have a bottle in his hand, and that he had no money to hire any other conveyance home.   Three other witnesses testified that they saw the plaintiff on the platform and talked with him; that "he was not drunk and showed no signs of being drunk, but was quiet and peaceable and was so when he attempted to go to the train."

The conductor testified that the plaintiff was drunk and staggering, and missed the gate the first attempt he made to enter; that he saw two quart bottles in the plaintiff's arms with something in them; that he told the plaintiff: "I cannot let you go; you are a nuisance to my passengers; I have been troubled with you all that I intend to be"; that the plaintiff promised to behave, but he declined to admit him, that he did not touch the plaintiff, but just reasoned with him and had no harm or feeling against him.   The conductor also testified (over plaintiff's objection) that the plaintiff had been on the train several times before, that he was generally drunk when getting on the train at Elizabeth City, boisterous, abrupt and profane, and passengers had complained; that on the day before he was on the train and behaved badly.

The chief of police said he saw plaintiff stagger, and three employees of the defendant testified that from the appearance of the plaintiff they thought he was drunk. There was other evidence more or less corroborative on both sides.

The defendant offered to ask another witness what was the plaintiff's conduct and condition on this conductor's train 22 March, 1903, with a view of showing that he was drunk and disorderly, so that passengers left the train. This was properly excluded. The right of a conductor to exclude him from the train 5 June, 1902, depended solely upon his condition at that time.

The Court properly charged the jury that if the plaintiff was drunk, then the defendant had a right to refuse to admit him on the train, and he could not recover any damages. Common carriers have a right, and indeed it is made their duty by Laws 1885, ch. 358, sec. 2, to refuse carriage to any intoxicated person, both on account of the danger of injury to him and his liability to become a nuisance to the other passengers. 3 Thomps. Dig., sec. 3092; *Murphy v. Railroad,* 118 Mass., 228; *Williams v. Railroad,* 66 N. Y., 642.

Besides the parts of the charge not excepted to and hence not sent up, the Court charged: "If the plaintiff had a ticket and was sober and offered to go on the train and was refused, he is entitled to recover the actual damages that he sustained, and if the refusal to allow him to go on the train was attended with undue force or other aggravating circumstances calculated to humiliate him or wound his pride, or undue force accompanied with fraud, malice, rudeness or other wilful wrong, such exemplary damages may be allowed as the jury think are warranted by the facts," and the defendant excepted. "That if you find from the evidence that the plaintiff was, at the time of his exclusion, really sober and entitled to enter the cars, had his ticket and presented himself and was refused, then he would be entitled to recover only such actual dam-

ages as he sustained by the wrongful act of the conductor (unless the act was done with fraud, malice, undue force or insult), in which would be included such sum as he may have paid for his ticket, with interest thereon, together with the reasonable cost of reaching his home by some other route, and compensation for the extra time lost to him by the wrongful act of the conductor; in estimating the actual damages suffered by him, you will not consider the fact that he or his family was at the time sick or any consequences growing out of that sickness, unless you find that the conductor knew of his physical condition at the time of his exclusion." This charge was given at the request of the defendant (and hence is not passed on by us), except the words found in parenthesis, which the Court added, and to the addition of these words the defendant excepted.

The defendant requested the Court to charge the jury as follows: "In this case there is no evidence of such fraud, malice, wantonness, insult or other aggravation which will justify the jury in assessing punitive damages." Refused, and the defendant excepted.

There was evidence, which the jury evidently found to be true, that the plaintiff was not drunk, but quiet and orderly, and that though he had a ticket in his hand entitling him to passage, the conductor rudely thrust him back in the presence of a large crowd, telling him he was drunk and was a nuisance, and refused him the passage he was entitled to, though he told the conductor he was sick and his family were sick, and causing him to walk ten miles home, which he reached at midnight. The Court could not, therefore, give the last prayer that there was no evidence of "wantonness, insult or other aggravation," justifying the assessment of punitive damages, and the charge above excepted to and the insertion in the last paragraph were not erroneous. *Purcell v. Railroad,* 108 N. C., 414 (3d headnote); 12 L. R. A., 113; *Hansley v. Railroad,* 117 N. C., at

pp. 569, 571; 32 L. R. A., 543; 53 Am. St. Rep., 600; 3 Sutherland on Damages, secs. 535, 537.

The defendant further requested an instruction "that if the plaintiff had before that time gone on the train of the defendant and been offensive and troublesome to other passengers and to the defendant's employees, and this was known to the conductor, then he might consider that fact upon the occasion complained of in deciding whether to admit the plaintiff on the train." This was also properly refused. That the conductor did consider the plaintiff's former conduct and not his conduct on this occasion was evidently the fault entitling the plaintiff to recover. A common carrier must treat all passengers alike. If the plaintiff, with a ticket and quiet, sober and orderly, presented himself for transportation on 5 June, 1902, he had the same rights as any other person whatsoever in the same condition. Common carriers can establish no "habitual criminals" regulations. The Code, sec. 1963, is mandatory that railroad companies shall take, transport and discharge passengers and property at the usual stopping places "on the due payment of the freight or fare legally authorized therefor, and shall be liable to the party aggrieved, in an action for damages, for any neglect or refusal in the premises." That one offering himself as a passenger has on other occasions been disorderly and offensive on the train is reason why the conductor should be critical in scrutinizing his condition when he offers to enter, and more observant of his conduct when on the train to prevent annoyance to passengers, but does not excuse him if by reason of the plaintiff's conduct on other occasions he wrongfully refused him carriage when in proper condition and armed with a ticket.

The verdict of the jury (and we must take it that they found the facts correctly) seems to be that the conductor was prejudiced against the plaintiff by reason of his former conduct (for he says he told the plaintiff: "I have been troubled

with you all I intend to be"), and wrongfully rejected him as a passenger, with rudeness, wantonness and insult, thrusting him back and charging him with being then drunk in the presence of a large crowd, and unjustifiably causing him a ten-mile walk homeward, with a railroad ticket in his pocket. The moderate verdict ($125) shows, too, that the jury considered all the circumstances of the case and gave weight to the plaintiff's precedents in assessing the humiliation he suffered.

Conductors have many aggravations, almost as many, perhaps, as policemen, but both classes must, perforce, keep their equanimity when on duty. It is the function of neither to punish any one by any discrimination in the discharge of their duties to the public.

No error.