WILLIAM F. CARROLL v. H. HORTON ROUNTREE

No. 763SC989

(Filed 5 October 1977)

**1. Rules of Civil Procedure § 56— summary judgment—findings of fact**

The court should not make findings of fact in a judgment entered on a motion for summary judgment because to do so indicates that a fact question is presented.

**2. Attorneys at Law § 5.1— attorney's breach of agreement with client— summary judgment**

In an action against an attorney for breach of an alleged agreement to withhold delivery to plaintiff's estranged wife of a check from the sale of land until the wife executed a separation agreement and a stipulation of dismissal of an alimony action, the trial court erred in entering summary judgment in favor of defendant attorney since there was a genuine issue of material fact as to whether the parties had in fact agreed that the check would be withheld until plaintiff's wife signed the documents.

**3. Attorneys at Law § 5.1— attorney's breach of agreement with client—damages**

If the jury should find that defendant attorney breached an agreement with plaintiff to withhold the delivery of a check to plaintiff's estranged wife until she executed a separation agreement and a stipulation of dismissal of an alimony action, plaintiff would be entitled to such damages as he could show were the natural and probable results of the breach and, in any event, would be entitled to nominal damages at least.

**4. Attorneys at Law § 5.1; Damages § 3.4— attorney's breach of agreement with client—damages for mental anguish**

Plaintiff is not entitled to recover damages for mental anguish for an attorney's breach of an agreement to withhold delivery to plaintiff's wife of a check from the sale of land until the wife executed a separation agreement and a stipulation of dismissal of an alimony action.

**5. Attorneys at Law § 5.1; Damages § 17.7— attorney's breach of agreement with client— subsequent misrepresentation—punitive damages—summary judgment**

Assuming that plaintiff's complaint stated a claim for punitive damages in alleging that defendant attorney breached his fiduciary obligation to plaintiff by failing to withhold delivery of a check to plaintiff's estranged wife until she had signed certain documents, that defendant subsequently misrepresented to plaintiff that the wife had signed the documents, and that defendant's actions were reckless, careless, intentional and malicious, the trial court properly entered summary judgment for defendant on the issue of punitive damages where defendant attorney's affidavit averred that he followed the customary practice of attorneys in his area by forwarding the check to the wife's attorney, who was responsible for obtaining the wife's signatures on the documents before disbursing any funds, and that he advised plaintiff that his wife had signed the documents because he thought everything had been accomplished, and where plaintiff presented no affidavits or other materials to contradict defendant's affidavit.

---

Carroll v. Rountree

---

APPEAL by plaintiff from *Webb, Judge.* Judgment entered 11 October 1976, in Superior Court, PITT County. Heard in the Court of Appeals 24 August 1977.

On 5 February 1975, plaintiff instituted this action in Durham County Superior Court seeking damages allegedly resulting from defendant's representation of plaintiff in Pitt County in the spring and summer of 1972. On motion of defendant, the matter was transferred to Pitt County for convenience of witnesses. Defendant, a practicing attorney in Pitt County, was engaged by plaintiff to represent him in an attempt to resolve the marital difficulties which existed between plaintiff and his wife, who was then a resident of Greenville, North Carolina. Plaintiff was then a resident of Durham, North Carolina. Plaintiff's complaint contained three counts. The first count contained allegations summarized as follows: During defendant's representation of plaintiff, an agreement was reached to settle his marital difficulties and have the suit against him for alimony dismissed. Plaintiff had inherited an interest in a farm, and it was agreed that the farm would be sold and the wife receive $10,969.01 of the proceeds in consideration of her executing a separation agreement, deed, and stipulation of dismissal. In consideration of fees paid or to be paid by him to defendant, defendant was: to obtain plaintiff's wife's signature on a deed conveying certain property to plaintiff, to obtain the wife's signature on a separation agreement, and to obtain the wife's signature to a stipulation of dismissal of the alimony action and deliver to the wife a check for $10,969.01. It was agreed between plaintiff and defendant, and defendant so represented to plaintiff, that the check would not be delivered to the wife until she had conveyed to plaintiff one-tenth of an acre of land and had executed a stipulation and order of dismissal in an action the wife had instituted against plaintiff for alimony and attorney fees, and had executed the separation agreement. On or about 12 July 1972, plaintiff received from defendant a letter enclosing original and copies of a separation agreement and a stipulation of dismissal and a check for $10,969.01 payable to plaintiff and defendant. Plaintiff signed the documents, endorsed the check, and returned all of them to defendant. By letter dated 17 July 1972, defendant forwarded to plaintiff the net amount due plaintiff with an accounting of the disbursement of funds of plaintiff which showed a payment of $500 fee to defendant for "appearance in court, drawing suit papers, deed of separation, deed and dismissal order, conference with client and opposing attorney, etc." The letter also advised: "If you recall, we had a hearing in the court, at which time

an order was entered last fall in your wife's case and we have com-
pletely disposed of this case by dismissal plus a separation agree-
ment plus a deed to the 1/10th acre." Subsequently, and because the
plaintiff had heard rumors that his wife had obtained the check
without signing the separation agreement and dismissal of the
lawsuit, plaintiff, under date of 14 October 1972, wrote defendant in-
quiring whether defendant had performed the fiduciary duties owed
plaintiff in connection with the funds which were to be used only if
plaintiff's wife executed the documents already referred to. This
letter was dated 14 October 1972. By letter dated 23 October 1972,
defendant advised plaintiff that plaintiff's wife "did sign the Deed of
Separation and also a Judgment dismissing the non-support action
against you." In the fall of 1974, plaintiff instituted in Durham Coun-
ty an action against his wife for absolute divorce. His wife was
served with the summons and complaint in Michigan and retained
counsel there, who, in turn, retained counsel in Durham to .defend
the action. When plaintiff learned his wife had retained counsel, he
wrote to defendant and asked for a copy of the executed deed of
separation and judgment dismissing the wife's action. Defendant
did not answer this letter. Subsequent to 11 December 1974, plain-
tiff's mother telephoned defendant asking for information about the
documents, but defendant refused her request and was rude and in-
coherent. Plaintiff contacted Durham counsel and, on 13 January
1975, learned that the action instituted by his wife was still pending
and that no deed of separation had been recorded in Pitt County
Registry. On or about 17 January 1975, plaintiff learned that defend-
ant had breached his fiduciary obligations to plaintiff by delivering
the check between 19 June and 27 June 1972 and allowing plaintiff's
wife to cash it without executing the documents required by the
agreement between plaintiff and defendant. As a result of the
breach of the fiduciary duties under the agreement, plaintiff has
been damaged in the amount of $11,469.01 (the $10,969.01 payment
to plaintiff's wife and the $500 fee paid by plaintiff to defendant).

     Count II adopted all the allegations of Count I and further al-
leged that as a result of "ascertaining the diabolical deceit" prac-
ticed on plaintiff by defendant, the plaintiff became emotionally dis-
turbed, upset and physically sick to such an extent that he lost his
job, is still emotionally disturbed, upset and physically ill and will
continue to suffer physical and mental anguish and loss of income
and has and will be damaged in the actual sum of not less than
$50,000.

Count III adopts the allegations of Count I and asks for not less than $200,000 punitive damages because of the "reckless, careless, intentional, malicious and gross actions" of defendant.

Defendant filed an unverified answer in which he admitted he was employed to represent plaintiff and that plaintiff had placed trust and confidence in his ability adequately to represent plaintiff. Defendant further admitted the receiving and writing of the letters set out in the complaint; that he had made the misrepresentations as alleged; that plaintiff's wife, in fact, had not executed the documents but that he was not aware of that fact at the time he made the representations. Defendant denied that he had agreed with plaintiff that the check would be delivered only upon the wife's executing the required documents. He denied that he had breached any fiduciary duty but averred that "in eastern North Carolina, and particularly in and about Pitt County, North Carolina, it is the customary and accepted practice by attorneys involved in disputes between clients to finalize out-of-court settlements by forwarding settlement checks to the receiving party's attorney; that the attorney receiving such settlement checks will see that the funds are properly disbursed and that all agreed upon documents or agreements will be executed by the receiving client in the manner agreed upon between counsel." He further averred that in representing plaintiff, he possessed and exercised the requisite professional skill and ability as an attorney customary in the community in which defendant practiced law.

After filing answers to plaintiff's interrogatories, defendant moved for summary judgment and filed affidavits in support thereof. Plaintiff filed his affidavit in opposition thereto. The court allowed defendant's motion and entered judgment in which he found facts and made conclusions of law. From this judgment, plaintiff appealed, excepting to certain of the findings of fact and conclusions of law.

*Nye, Mitchell & Bugg, by John E. Bugg, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey and Clay, by Ronald C. Dilthey, for defendant appellee.*

MORRIS, Judge.

[1] The purpose of the motion for summary judgment is to allow the court to determine, prior to trial, whether there exists any genuine issue with respect to a material fact. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Britt v. Britt,* 26 N.C. App. 132, 215

S.E. 2d 172 (1975), and if the court determines there is no genuine issue of material fact, an early effective disposition of the matter is possible under § 1A-1, Rule 56. *Britt v. Britt, supra.* It is not within the purview of the summary judgment procedure for the court to resolve disputed material issues of fact. Here it appears from the judgment that the court treated the hearing as a nonjury trial of the case on its merits apparently considering it his function to find facts from the pleadings, affidavits, and interrogatories, make conclusions of law and enter final judgment between the parties. We have repeatedly held that finding facts in a judgment entered on a motion for summary judgment is unnecessary and ill advised simply because to do so indicates that a fact question is presented. *Wall v. Wall*, 24 N.C. App. 725, 212 S.E. 2d 238 (1975); *cert. den.* 287 N.C. 264; *Stonestreet v. Motors, Inc.*, 18 N.C. App. 527, 197 S.E. 2d 579 (1973). Where no genuine issue of material fact exists, and the court finds facts, the implication that a fact question is presented is, of course, unwarranted. That is not the situation here. The pleadings, affidavits, and interrogatories clearly present a genuine issue of material fact.

Plaintiff alleges in his complaint and avers in his affidavit that it was agreed between him and defendant that the check would not be delivered to plaintiff's wife and her attorney until the deed of separation and stipulation of dismissal were executed by her, or at least simultaneously therewith, and that the check was delivered to defendant on or about 19 June 1972 to be held "in trust or in escrow" for the purposes stated. This was categorically denied by defendant's answer.

Plaintiff's interrogatory No. 39 was as follows: "Was there an agreement between the plaintiff and defendant that the wife would not receive her check until she had signed the Deed of Separation and the Stipulation of Dismissal?" Defendant's answer to that interrogatory is: "There was no such agreement between plaintiff and defendant. In fact, plaintiff never gave defendant the check. The check was given to defendant by Mr. R. E. Carroll whose signature appears on such check."

Plaintiff's affidavit avers the agreement to be the same as his pleadings. Defendant, in his affidavit, did not specifically again deny plaintiff's version of the agreement. However, he averred: "I was to prepare the land deed for the signature of Elizabeth R. Carroll and was to deliver to Mr. M. E. Cavendish the settlement check of $10,969.01. Mr. M. E. Cavendish was to prepare the separation agreement and stipulation of dismissal for the signatures of both he

(sic) and his client. In June, 1972, the settlement check was delivered to Mr. Cavendish's office. . . The delivery of the settlement check to the office of Mr. M. E. Cavendish was done pursuant to the method and means agreed upon in accomplishing this settlement. It is both customary and the accepted practice by the attorneys in Eastern North Carolina and particularly in Pitt County, that settlement checks are forwarded to the receiving client's attorney, who in turn will be responsible for obtaining his client's signatures to the agreed documents before the disbursement of such funds. Although the funds were disbursed to Mrs. Elizabeth Carroll before she executed the separation agreement and the stipulation of dismissal, this was done without Mr. Cavendish's knowledge and while he was not present in the office."

[2]   Plaintiff's cause of action is based, not on the allegation that he never received the services for which he was paid, but on the premise that defendant delivered the check without receiving the signed documents, thereby breaching the agreement with plaintiff. It is readily apparent that there is a real dispute between plaintiff and defendant as to what the agreement was with respect to the delivery of the check. That this is a material fact is just as apparent and is one which must be submitted to a jury, defendant having requested a jury trial. Defendant concedes that he made the misrepresentations alleged but contends they were made without knowledge of their falsity.

Since it is our opinion that summary judgment was erroneously entered, we think it advisable that we discuss the question of damages.

[3]   In its judgment the court's first conclusion of law was as follows: "As to the plaintiff's first count, the plaintiff has not made any allegations which entitle him to recover from the defendant. He has alleged that he delivered to the defendant the sum of $10,969.01 to settle an action between him and his former wife. This action has been settled and the defendant and his former wife are now divorced. The defendant has received what he contracted to receive and has suffered no monetary damage even if the defendant breached the contract." Plaintiff excepted to this conclusion, as he apparently felt compelled to do since the court erroneously made findings of fact and conclusions of law. We do not deem it necessary to discuss the efficacy of the conclusion of law except as it relates to damages. If the jury should find the agreement between the parties to be as plaintiff contends, and that defendant breached the agreement, plaintiff would be entitled to such damages as he could show

were the natural and probable results of the breach, *Maxwell v. Distributing Co.*, 204 N.C. 309, 168 S.E. 403 (1933), but, in any event, proof of a breach would entitle him to nominal damages at least, *Builders Supply Co. v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968), and prevent a directed verdict for defendant.

**[4]**  With respect to plaintiff's second count, wherein he sought damages for mental and emotional distress suffered by him the court concluded: "As to the second count the plaintiff is not entitled to recover in this action for being emotionally upset or physically ill. While it may be the natural, probable and foreseeable consequences for a widow to suffer mental anguish for having her deceased husband buried in a defective coffin, it should not be so for a concealment of the fact that the separation agreement had not been signed and the plaintiff's wife's action against him had not been dismissed. The law requires that men be of sterner stuff." In passing we note that we are not familiar with the legal requirement referred to in the last sentence of the conclusion of law. We assume that the court, by its remark with respect to damages to a widow "for having her deceased husband buried in a defective coffin," is referring to *Lamm v. Shingleton*, 231 N.C. 10, 55 S.E. 2d 810 (1949). There, as here, the action was essentially one for breach of contract—not an action in tort. In speaking to that question the Court said:

> "This is essentially an action for damages for breach of contract. Plaintiff alleges a contract to furnish a casket and watertight vault and conduct the funeral and inter the body, the breach thereof by failure to lock the vault, and damages resulting from the breach. The further allegation that the defendants' failure to lock the vault at the time of the burial, as a result of which water and mud entered the vault and forced its top to the surface, was due to their negligence and carelessness does not convert it into an action in tort.

> The defendants held themselves out as specially qualified to perform the duties of an undertaker. When they undertook to conduct the funeral of plaintiff's deceased husband they impliedly covenanted to perform the services contemplated by the contract in a good and workmanlike manner. Any breach of the duty thus assumed was a breach of the duty imposed by the contract and not by law." *Lamm v. Shingleton*, supra at 13.

So in the case *sub judice*, it becomes necessary to determine whether, should the jury find a breach of contract, mental anguish is an element of damages to be considered by the jury for the breach of

this contract. In *Lamm*, the Court noted that damages for mental anguish could be recovered in an action for breach of contract to marry, *Allen v. Baker*, 86 N.C. 91, 40 Am.Rep. 444; Anno. 41 L.R.A. n.s. 842 and for failure to transmit a death message when the import of the message and the interest of the intended recipient is made known to the transmitter at the time the message is accepted by the telegraph company. *Russ v. Telegraph Co.*, 222 N.C. 504, 23 S.E. 2d 681 (1943); *Betts v. Telegraph Co.*, 167 N.C. 75, 83 S.E. 164 (1914); *Thomason v. Hackney*, 159 N.C. 299, 74 S.E. 1022 (1912). These situations and the one in *Lamm* are, however, singular. The usual contract is commercial in nature and the pecuniary interests of the parties is the primary factor, since they relate to property, or to services to be rendered in connection with business, or to services to be rendered in professional operations. Damages for mental anguish are, therefore, generally not recoverable. There are exceptions. The death message cases and the burial contract cases are among the exceptions. Plaintiff concedes that in North Carolina, in the typical breach of contract action, damages for mental and emotional distress are not normally recoverable because they are not viewed as natural foreseeable consequences of the breach, but he contends that the defendant's breach of the contract here is analogous to the breach of a contract to marry because the subject matter of the contract was of a personal rather than commercial nature. Indeed, plaintiff asks that we take judicial notice "of the fact that when any attorney undertakes to represent a party in his domestic relations problems, then he must be held to reasonably foresee that his client's problems are so coupled with matters of a personal nature and mental concern that if he should fail to do that which he agrees to do and is paid to do, then he will be liable for any mental anguish suffered by such client as a result of his attorney's wrongful acts." This we certainly are not willing to do, nor do we find any authority which would even suggest that we should do so—certainly there is none which would compel such a result. While we readily concede that there could be contracts between attorney and client so personal in nature that the attorney could be assumed to have entered the contract with the knowledge that a failure to fulfill the obligation thereunder in the manner contemplated by the parties would naturally and probably result in the client's suffering mental anguish, we do not think the contract which is the subject of this action falls in that category. We do not regard this contract as predominantly personal in nature. It was necessary that plaintiff obtain his wife's signature to a deed in order that a farm inherited by him and other members of his family could be sold. Plaintiff's wife

had brought an action against him for alimony. The fulfilling of the obligations under the contract in the manner agreed as alleged by plaintiff would have resulted in the sale of the farm and obtaining funds with which to settle the alimony action and obtain its dismissal and settle other property and marital rights of the parties. We agree that plaintiff is not entitled to recover damages for mental anguish.

[5] The trial court also held that plaintiff is not entitled to punitive damage. We agree. The law of North Carolina with respect to this question is stated in *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976):

> "North Carolina follows the general rule that punitive or exemplary damages are not allowed for breach of contract, with the exception of breach of contract to marry. *Oestreicher v. Stores, supra; King v. Insurance Co.*, 273 N.C. 396, 159 S.E. 2d 891 (1968). The general rule in most jurisdictions is that punitive damages are not allowed even though the breach be wilful, malicious or oppressive. *See, e.g.*, John C. McCarthy, *Punitive Damages in Bad Faith Cases* (1976). Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages. *Oestreicher v. Stores, supra* at 134-35, *citing Saberton v. Greenwald*, 146 Ohio St. 414, 66 N.E. 2d 224 (1946) and 25 C.J.S. Damages § 120.
>
> The early case of *Richardson v. R.R.*, 126 N.C. 100, 101, 35 S.E. 235 (1900) relies on three older cases to support the proposition that '[t]here are many cases where an action for tort may grow out of a breach of contract, but punitive damages are never given for breach of contract, except in cases of promises to marry: *State v. Skinner*, 25 N.C. 564; *Purcell v. R.R.*, 108 N.C. 414; *Solomon v. Bates*, 118 N.C. [311] . . . .' While the quoted statement is arguably equivocal, *Purcell v. R.R.*, 108 N.C. 414, 12 S.E. 954 (1891), cited in support of it, recognized the rule noted in *Oestreicher*, and allowed punitive damages where a separate tort was identified, even though the tortious conduct also constituted a breach of contract. While the distinction between malicious or oppressive breach of contract, for which punitive damages are generally not allowed, and tortious conduct which also constitutes, or accompanies, a breach of contract is one occasionally difficult of observance in practice, it is nevertheless fundamental to any consideration of the question of punitive damages in contract cases. *See* 84 A.L.R. 1345,

where an annotation upon 'Punitive or exemplary damages for breach of contract . . . .' expressly excepts from its scope '[t]he recovery of exemplary damages in tort actions for breach of a duty growing out of a contract, which are, therefore, not actions purely ex contractu for failure to comply with the contract. . . .'

Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed. *Oestreicher v. Stores, supra; Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570 (1922). Such aggravated conduct was early defined to include 'fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness. . . .' *Baker v. Winslow, supra, citing Holmes v. R.R.*, 94 N.C. 318 (3 Davidson) (1886)."

Here plaintiff alleges that defendant failed to hold the funds until plaintiff's wife had signed all the documents she was supposed to sign. He further alleges that subsequently defendant misrepresented the facts by advising plaintiff that everything had been done in accordance with the agreement, and that the breach of contract was in violation of defendant's fiduciary obligations which he attempted to cover up "by misrepresentation and gross lies". Count II, seeking damages for mental anguish, incorporates the allegations of Count I and alleges defendant's actions were "malicious, intentional, and diabolical". Count III, seeking punitive damages, incorporates all the allegations of the first two counts and additionally alleges: "That the reckless, careless, intentional, malicious and gross actions of the defendant in violation of his fiduciary duties owed unto the plaintiff entitles the plaintiff to punitive damages . . .".

Assuming that the pleadings are sufficient to allege punitive damages, the defendant's motion for summary judgment with respect to this count was properly allowed. In support of his motion, defendant, by affidavits, admitted, as he had in his answer, that the check was delivered to plaintiff's wife before she signed the deed of separation and stipulation of dismissal and that he did advise plaintiff that everything had been accomplished. Defendant averred, however, that the transaction was handled in a manner customarily used by attorneys in his area and that his advice to plaintiff by letter was done without intent to defraud but because he thought everything had been accomplished. Plaintiff presented nothing to the contrary — either by his affidavit or by the interrogatories and defendant's answers thereto. It is clear that had the same evidence

been presented at trial defendant would have been entitled to a directed verdict in his favor with respect to claim for punitive damages. The court, therefore, properly allowed defendant's motion for summary judgment as to this phase of the lawsuit, since the plaintiff neither showed that additional affidavits with respect to this question were at that time unavailable to him nor came forward with affidavits or other materials showing that he was entitled to have an issue presented to the jury as to punitive damages. *First Fed. Sav. & Loan Assn. v. Branch Banking & Trust Co.*, 14 N.C. App. 567, 188 S.E. 2d 661 (1972), *rev'd on other grounds* 282 N.C. 44, 191 S.E. 2d 683 (1972); *see also Millsaps v. Wilkes Contracting Co.*, 14 N.C. App. 321, 188 S.E. 2d 663 (1972), *cert. den.* 281 N.C. 623, 190 S.E. 2d 466 (1972).

Reversed in part; affirmed in part.

Judges PARKER and CLARK concur.