C. H. STEPHENSON AND WIFE, MINNIE DHUE STEPHENSON, v. DUKE UNIVERSITY.

(Filed 20 April, 1932.)

**1. Appeal and Error F d—Only questions presented by appealing party will be considered by the Supreme Court.**

Where, in an action by a father and mother to recover damages for the mutilation of the body of their dead child, the defendant's demurrer on the ground that the complaint was insufficient to state a cause of action is sustained as to the mother and overruled as to the father, and the defendant does not appeal from the judgment, in the Supreme Court it will be deemed that the defendant admitted that the action could be maintained by the father, and the question of his right to maintain the action will not be considered.

**2. Parent and Child A e—Father has preferential right to maintain action for mutilation of dead body of minor child.**

A father's relation to his minor child and the consequent duties imposed on him by law clothes him with a preferential right of action over the mother of the child to bring an action to recover damages for the mutilation of its dead body, and where an action therefor is brought by the father and mother jointly, a judgment sustaining the defendant's demurrer as to the mother will be sustained on appeal, and the provisions of N. C. Code of 1931, 137(6), entitling the father and mother to share equally in the estate of a deceased child does not affect this result.

APPEAL by plaintiffs from *Midyette, J.,* at January Term, 1932, of DURHAM.

The record contains the following concise statement of the case on appeal:

This is an action instituted in the Superior Court of Durham County to recover both compensatory and punitive damages against the defendant for the alleged wrongful and wilful mutilation of the dead body of the child of plaintiffs.

The action was originally instituted by C. H. Stephenson and entitled "C. H. Stephenson *v.* Duke University."

His Honor Judge Frizzelle at August Term, 1931, ordered that the *feme* plaintiff be made a party to this action, to which said order no objection or exception was made, and the plaintiffs were allowed thirty days from the date of said order to file a new and joint complaint herein, and defendant was allowed thirty days after the filing of said complaint to file answer or demurrer.

A new joint complaint was filed in the action, and defendant filed a demurrer to the new joint complaint, and the cause then came on again for hearing and was heard before his Honor, Garland E. Midyette,

judge presiding, at the January Civil Term, 1932, of said Durham County Superior Court. His Honor, Judge Midyette, entered a judgment "that the demurrer as to the said Minnie Dhue Stephenson be, and it is hereby sustained, but that the demurrer as to plaintiff C. H. Stephenson be, and it is hereby overruled."

To the judgment as entered the plaintiffs excepted and assigned the same as error and appealed to the Supreme Court.

The demurrer was interposed upon the following ground:

1. The *feme* plaintiff is not entitled to maintain any action alone or jointly with her coplaintiff on account of the matters and things set out in the complaint.

2. The complaint does not state a joint cause of action on behalf of the plaintiffs; if it states any cause, which is denied, it states two causes—one on behalf of each of the plaintiffs.

3. If the complaint states two causes of action, which is denied, the two causes have been improperly united.

4. If the complaint states a joint cause of action entitling the plaintiff to nominal damages, which is denied, it seeks to recover damages which are peculiarly personal to each plaintiff and not to the plaintiffs jointly.

The court sustained the demurrer as to *feme* plaintiff's alleged cause of action and overruled it as to the cause stated by C. H. Stephenson. The plaintiffs excepted and appealed.

*William B. Guthrie and S. C. Brawley for plaintiffs.*
*Fuller, Reade & Fuller, and T. D. Bryson for defendant.*

ADAMS, J. This action was brought to recover damages for the mutilation or autopsy of the dead body of a child. The plaintiffs were the child's parents. The court adjudged in effect that the father may maintain the action and that the complaint does not state a cause of action in behalf of the mother. The plaintiffs appealed; the defendant did not appeal. We therefore treat as conceded the defendant's satisfaction with the judgment and its acquiescence in the conclusion that the action may be prosecuted by the male plaintiff, and that as to him the complaint states a cause of action. The right to bury the dead is generally treated as a *quasi*-right of property. *Floyd v. R. R.,* 167 N. C., 55. If the father has a right of action we need discuss neither the divergent views expressed in regard to the right of property in the dead body of a human being nor the legal right of the proper person to prosecute a suit for its mutilation. In this State the right to maintain an action for such mutilation has been recognized for almost a third of a century. *Kyles v. R. R.,* 147 N. C., 394. The single question with which we are

now concerned is whether upon the allegations in the complaint the *feme* plaintiff, the mother of the deceased child, has a cause of action. To this question our investigation shall be restricted, because "it probably is not wise, if proper, to attempt to declare general rules beyond the case actually presented."

We have found few cases dealing with the precise question and in those examined there is apparent discrepancy of statement in reference to the right of parents to institute a joint action for the mutilation of the dead body of their child. In *Renihan v. Wright,* 9 L. R. A. (Ind.), 514, the Court sustained a joint action for the breach of a contract of bailment by which the undertakers and funeral directors agreed for a compensation jointly paid by the parents safely to keep the body of the deceased child until the time when the parents might be prepared for the interment. The question of a joint action seems not to have been raised in *Douglas v. Stokes,* 42 L. R. A. (Ky.), 386. It was said in *Coty v. Baughman,* 48 A. L. R. (S. D.), 205, that by virtue of a statute the duty of burial devolved alike upon the father and the mother. *Wright v. Beardsley,* 89 Pac. (Wash.), 172 was an action to recover damages for breach of a contract for the proper burial of a deceased child and a joint action was upheld on the ground that persons who are the lawful custodians of a deceased body may maintain an action for its desecration. These and other cases of like tenor are not decisive of the question before us.

There are others in which suits for mutilation brought by the father alone were upheld. In *Burney v. Children's Hospital,* 47 N. E. (Mass.), 401, the demurrer raised the question whether the father of a child, who was its natural guardian and who had intrusted the child to a hospital for treatment could maintain an action against the hospital for an autopsy performed without his consent. The Court held that the father as the natural guardian of the child was entitled to the possession of the body for burial and being entitled to its possession could maintain an action against one who unlawfully mutilated the remains. The Court of Appeals of Alabama has said: "The right of a father to care for, watch over, and bury the dead body of his minor child has always been recognized and protected by the law." *Birmingham Transfer & Traffic Co. v. Still,* 61 So., 611. Also in *Southern Life & Health Ins. Co. v. Morgan,* 105 So., 161: "It is without conflict in this case that plaintiff was the father of the deceased; that, if he (the deceased) had a wife living, the wife was not present and had nothing to do with the custody of the body. In the absence of the wife the father had the lawful custody of the body, and it was his duty to give it decent interment."

For want of a more complete statement of the facts we should hesitate to accept these decisions as controlling in the present case. We have cited them in contrast with those representing the opposing view as indicating diverging lines of thought.

Among our own decisions *Floyd v. R. R., supra,* is the nearest approach to the identical question presented by the appeal. There the mother, while the father was living, instituted an action against a railroad company for the negligent mutilation of the dead body of her son. The father, who was a nominal party, disavowed any right to recover damages in his own behalf. It was, therefore, regarded as her suit, and not his. The Court held that the mother could not maintain the action. The *ratio decidendi* was two-fold: (a) the father, being the natural guardian of his child, could by reason of his relationship and his legal obligations and responsibilities, maintain an action for an unauthorized autopsy; (b) the surviving father, if his child died intestate without wife or children, was entitled to all the personal property of the deceased child. Pub. Laws, 1911, chap. 172.

In reference to the first proposition the court observed that the father is primarily liable for the support, maintenance and education of his child as between himself and its mother; he is entitled to its services and earnings; the right of action for injury to the person of his child (quoting from 29 Cyc., 1637) belongs primarily to the father and rests upon the doctrine of compensation. One basis of the right of action was said to be the resulting loss of the services of the child, but it was stated as the better view that the right of action rests not only upon the father's right to services but also upon the duty of care and maintenance. If, inquired the court, the father is entitled to the preferential right to sue in the cited instances, why not where the body of the child, with whose decent burial he is charged, has been mutilated or disfigured after death? The opinion proceeds: "At common law it was the duty of the father to decently inter his child and to defray necessary expenses thereof if he possessed the means. Would it not seem to follow logically and naturally, as the night the day, that if he must attend to its decent burial, he is entitled to recover for any indignity to or defacement of the body by which the decent interment is prevented or rendered more difficult? We are unable to perceive why this is not so."

True, it is said *arguendo* that the right to bring suit goes to the next of kin; and the act of 1911, *supra,* is cited in support of the conclusion announced in *Floyd's case.* As a corollary from this part of the opinion the appellants insist that the mother, being entitled under the act of 1915 equally with the father to the estate of the deceased child, has equal right to maintain the action. Pub. Laws 1915, chap. 37; Code

of 1931, sec. 137(6). This result does not necessarily follow. A careful perusal of the opinion will indicate, we think, that the act of 1911 was referred to primarily in support of the proposition that the father's relation to the child imposed certain duties upon him which entailed the primary right of suit in his name in cases of this kind. This thought was probably in the mind of the Court, for it is said in the dissenting opinion that the statute of distributions had no application and that an action for the tort was not required to be brought by the next of kin. Our conclusion is that the father's relation to the child and the consequent duties imposed upon him by the law, some of which have been enumerated, are of such character as to clothe him with a preferential right of action and that the judgment should be affirmed. However acute the mother's suffering in comparison with that of the father, we are not now concerned with the doctrine of mental anguish beyond suggesting that the practical difficulty of assessing damages in a joint action of this nature is removed in the present case by our holding that upon the allegations in the complaint the father has the right of action. Questions possibly arising among the next of kin when there is no surviving father or mother must be solved when they are properly contested. Judgment

Affirmed.