NEWLAND SPARKS AND WIFE, ELLA SPARKS, BY HER NEXT FRIEND, G. C. WILLIS, v. TENNESSEE MINERAL PRODUCTS CORPORATION,

and

ELLA SPARKS, BY HER NEXT FRIEND, G. C. WILLIS, v. TENNESSEE MINERAL PRODUCTS CORPORATION.

(Filed 13 October, 1937.)

1. **Negligence §§ 3, 19a—Evidence held sufficient for jury on issue of negligence in mining operations.**

    Evidence that defendant mining company's agent discovered that dynamite had been put in a blasting hole without his knowledge or direction, and that without investigating the other blasting holes that had been drilled, he further loaded, wired, and fired them, without notice to nearby property owners, and that the explosion therefrom was exceptionally violent and caused large rock to be thrown through the roof of plaintiffs' house, *is held* sufficient to be submitted to the jury on the issue of defendant's negligence.

2. **Negligence § 3—**

    The operator of a mine is liable for damage caused by negligence in the use of unsafe or unnecessarily violent explosive material, or by the careless management of materials in common use.

3. **Negligence §§ 3, 18—**

    In an action to recover for damage caused by mining operations, the evidence may render it competent and material for the jury to consider whether it was defendant's custom to give notice before setting off a blast, and whether such notice was given before the explosion causing injury.

4. **Damages § 1—**

    While ordinarily fright and nervousness alone may not be made an element of damage, if such fright and nervousness is caused by defendant's negligence, and results in impairment of health and loss of bodily power, the injury is a proper subject of compensatory damages.

APPEAL by plaintiffs from *Clement, J.,* at July Term, 1937, of MITCHELL.  Reversed.

These two consolidated actions were instituted to recover damages for personal injuries to the plaintiff Ella Sparks, and for property damage

to the house of Ella Sparks and her husband, Newland Sparks, resulting from the alleged negligent manner in which the defendant carries on its blasting operations in mining for feldspar. From the judgment of nonsuit entered at the conclusion of all the testimony, plaintiffs appealed.

*Geo. M. Pritchard, M. A. James, Geo. L. Greene, and Chas. Hutchins for plaintiffs, appellants.*

*Walter C. Berry, McBee & McBee, and Walter Hoyle for defendant, appellee.*

BARNHILL, J. The evidence, viewed in the light most favorable to the plaintiffs, tends to show that when the defendant's blasting in connection with its mining operations is carried on in a careful and workmanlike manner it would only throw small gravel and small rock at short distances, never as far as to the residence of the plaintiffs, and that the noise from the blast was not such as to disturb the plaintiffs; that on the day in question there was an unusually loud and violent explosion caused by the blasting of the defendant; that this blasting hurled rock through the roof, walls, and windows of the house and into the kitchen of plaintiffs; that the *feme* plaintiff was then in her kitchen; that she suffered terrible shock and injury to her nerves, resulting in loss of weight, nervousness, periodical confinement in bed, and other ailments; that the defendant ordinarily gave notice to the plaintiffs and others prior to blasting, but that on this occasion it failed to give any notice to these plaintiffs; that about 28 days prior to the blasting in controversy the defendant's employees had drilled seven deep holes and thirty dobie holes; that the holes ranged from seven inches to ten feet deep; that on the day of the blasting defendant's employees ascertained that the gunny sacks put in the holes when drilled had been removed and the holes had been filled with rocks, sticks, steel, and other debris; that defendant's agent in charge of blasting began to unstop the holes; that in so doing he located one-half joint of dynamite in one of the holes, which was not put there by him or with his knowledge; that when he found the dynamite he did no more work whatsoever towards cleaning out the holes, because he became frightened. He went ahead and loaded them and put from one-fourth joint to one-half joint in ten dobie holes and one-half joint in the eight-foot hole, which had been cleared out a distance of from 18 inches to four feet; that thereupon the ten dobie holes and the large hole were connected to the lead wire and "fired"; that the explosion which resulted was out of proportion to the quantity of dynamite put in the holes by the blaster.

It appears from this testimony that the blast in question was unusually violent and out of the ordinary, and that it threw rocks a distance of

125 feet over, across, and upon the house of the plaintiffs, doing damage to the house and frightening the *feme* plaintiff to such an extent that she has been more or less incapacitated since. It also tends to show that the agent of the defendant discovered that dynamite had been put in the blasting holes without his knowledge or direction, and that notwithstanding such information he abandoned further effort to clear out the holes or to ascertain to what extent the holes had been loaded with dynamite by some other person; that he, having received warning from his discovery, and having knowledge that the holes had been tampered with and dynamite put therein, proceeded to further load the holes and to wire and fire them without first ascertaining to what extent, if any, the holes had already been loaded with dynamite. In that connection defendant's witness testified: "I didn't clear the 8-foot hole clean because there was in it rock and dirt and sticks and I never got it cleaned out and I couldn't tell you what was in it down there, only there was bound to have been some explosive. I don't know what was in that hole, but I found enough to be careful. It kind of excited me; you see this one hole was actually loaded and nobody knew about it. Dobie holes are more dangerous to scatter little things than the holes drilled and loaded deep. They make little damage. A big damage is like I tell you, you have to throw big rocks to go through a house and you have got to have more than dobies shooting a large hole in a house."

This evidence was sufficient to be submitted to the jury upon the question of defendant's negligence. Where there is testimony tending to show that injuries done to the adjacent land, or the buildings on it, were due to the use of unsafe or unnecessarily violent explosive material, or were caused by the careless management of the materials in common use, and also contradictory evidence, it is for the jury to find the facts upon which the question of negligence depends. Where a human being is killed or injured at his dwelling on his own land by a blast on the right of way, condemned out of the same tract, in addition to passing upon the questions whether proper material was used and handled with skill, the testimony may make it material for the jury to determine whether the agents of the corporation had been accustomed to give the injured party a signal before igniting the powder, and, if so, whether such notice was given before the explosion which caused the injury. *Blackwell v. R. R.,* 111 N. C., 151, and cases therein cited.

The fact that the *feme* plaintiff was not actually struck by one of the flying rocks does not necessarily preclude recovery. *Wiggins v. R. R.,* 171 N. C., 773.

While fright and nervousness alone, unaccompanied or followed by physical injury, do not constitute an element of damages, if this fright and nervousness is a natural and direct result of the negligent act of the

defendant and naturally and directly causes an impairment of health or loss of bodily power, then this would constitute an element of injury to be considered by the jury. *Kimberly v. Howland,* 143 N. C., 398; *Kirby v. Stores Corp.,* 210 N. C., 808.

The judgment of nonsuit is

Reversed.