CARL MORROW AND ITASCA MORROW, BY THEIR NEXT FRIEND, J. W. MORROW, v. SOUTHERN RAILWAY COMPANY AND FRANK CLINE.

(Filed 2 March, 1938.)

1. **Dead Bodies § 3—**

A right of action for the mutilation of a dead body of a person divorced at the time of death rests in his children as his next of kin.

. 2. **Dead Bodies § 5—**

Mutilation which accompanies a killing does not give rise to a cause of action for wrongful mutilation of a dead body, such cause of action existing only for mutilation after death.

3. **Same—To recover for mutilation of body by train, plaintiff must show that body was struck by train intentionally or negligently.**

In order to recover for the mutilation of a dead body by a railroad train, plaintiffs must show by the greater weight of the evidence that the body was struck by a train, and also that the engineer saw, or could have seen in the exercise of due care, the body, recognizable as that of a human being, on the track in time to have stopped and avoided hitting it. Evidence tending to show merely that the body, mutilated to such an extent as not to have the appearance of that of a human being, was found scattered up and down the track, is insufficient to be submitted to the jury.

4. **Same: Railroads § 10—**

It is not the duty of an engineer to stop his train whenever he sees any object on the tracks.

5. **Master and Servant § 23—**

Since the doctrine of *respondeat superior* is based upon responsibility for the negligent act of the servant, when judgment as of nonsuit is granted on the issue of the servant's negligence, without appeal, the judgment is conclusive against plaintiffs as to the employer also.

APPEAL by defendant, Southern Railway Company, from *Sink, J.*, at October-November Term, 1937, of SWAIN. Reversed.

This is a civil action instituted to recover damages for the wrongful and tortious mutilation of the dead body of the father of the infant plaintiffs. The corporate defendant operates a train in the evenings from Asheville to Bryson City, which train passes Governors Island Flag Station about 7 o'clock p. m. The train makes a return trip in the mornings, leaving Bryson City about 8 o'clock a. m. The defendant, Frank Cline, is the engineer operating said train as the agent and employee of the corporate defendant. In the mornings the train passes Governors Island Station at about 8:20 a. m. On the morning of 11 November, 1934, this train passed the point at which the body of the deceased was found, stopped and backed back near the point, and the

employees of the defendant company and others got off and discovered parts of the remains of the deceased. The train then proceeded to the next station, stopped and then proceeded on its run. Shortly thereafter the coroner was called from the station and he and others went to the scene. The body was badly mutilated. The head, one arm and shoulder were found in the weeds near the track. This part of the body had frost on it. The heart, lungs, small particles of flesh and the torso were found scattered along the track over a distance of 150 to 200 feet in between the rails. The torso also had frost on it. There was very little . blood. The witnesses testified that the torso looked like it had been wadded up or chewed up; that it looked like a "tow sack." The body was found about midway of a 600-yard straightaway. At the conclusion of the plaintiffs' evidence the defendants moved for judgment as of nonsuit. The motion was allowed as to the defendant Frank Cline and denied as to the Southern Railway Company and the said defendant excepted. The defendant having offered no evidence, issues were submitted to and answered by the jury in favor of the plaintiffs. From judgment thereon the defendant Southern Railway Company appealed.

*T. D. Bryson, T. D. Bryson, Jr., and Edwards & Leatherwood for plaintiffs, appellees.*
*W. T. Joyner and Jones, Ward & Jones for defendant, appellant.*

BARNHILL, J. At the time of the death of Robert Morrow, father of the infant plaintiffs, he was divorced. The cause of action, if any, relied upon by the plaintiffs, therefore, rests in the plaintiffs, his only next of kin. It does not appear from the record, and the plaintiffs do not contend, that there is any sufficient evidence tending to show that the train of the defendant company killed the deceased, and this is not an action for wrongful death. All the evidence tended to show that at the time the body was discovered on the morning of 11 November, 1934, the deceased had been dead twelve to sixteen hours. If the deceased was killed by a train of the defendant it is apparent that he was killed by the train passing the point on the evening of 10 November.

It is a well established principle of law that mutilation which accompanies a killing does not give rise to a cause of action. Such mutilation as occurred at the time the deceased was killed must be eliminated from consideration.

This leaves for determination the one question as to whether there is sufficient evidence in the record to show the tortious mutilation of the body of the deceased by the defendant to be submitted to the jury. The first case in our courts dealing with the right to recover for wrongful mutilation is *Kyles v. R. R.*, 147 N. C., 394, in which it is said: "This

is not an action for the negligent killing of the deceased, but an action by the widow (here the next of kin) for the willful, unlawful, wanton and negligent mutilation of his dead body. She was entitled to his remains in the condition found when life became extinct; and for any mutilation incident to the killing the defendant would not be liable, but it is liable in law for any further mutilation thereof after death, if done either willfully, recklessly, wantonly, unlawfully or negligently." *Lawson v. Chase,* 47 Minn., 307; *Foley v. Phelps,* 37 N. Y., Supp., 471; *Stephenson v. Duke University,* 202 N. C., 624.

To maintain their action the plaintiffs must show by competent evidence not only that the body of the deceased was mutilated by a train of the defendant company, but likewise that such mutilation was either intentionally or negligently committed. Plaintiffs were unable to offer any evidence tending to show the condition of the body or how it was lying on the track, or any other circumstances in connection therewith, prior to the time defendant's train passed over the track on the morning of 11 November, except that it is apparent that the head, one arm and a part of his shoulder was then some distance from the track in the weeds. After the body was discovered it had been mutilated to such an extent that it was scattered up and down the track. From the testimony of witnesses it is clear that the body did not at that time have the appearance of a human being. It was not the duty of the engineer to stop his train whenever he saw any object upon the track. The plaintiffs must show by the greater weight of the evidence that the engineer saw, or by the exercise of ordinary care could have seen, an object having the appearance of a human being lying on the track, and that he saw it, or by the exercise of ordinary care could have seen it, in time to stop his train before striking the body. As there is a total absence of evidence in this respect we are of the opinion that the plaintiffs failed to offer sufficient evidence to be submitted to the jury on the first issue.

But there is a further compelling reason why the plaintiffs cannot now maintain their action against the appealing defendant, even though it be conceded that there was some evidence tending to show wrongful mutilation. It is alleged in the complaint, and the evidence tends to show, that the defendant Cline was the engineer in charge of defendant's train, both on the evening of 10 November and the morning of 11 November. If the defendant is liable at all, it is liable under the doctrine of *respondeat superior.* The wrongful mutilation, if such occurred, was attributable to the defendant's agent, Cline. At the conclusion of the plaintiffs' testimony the defendants moved for judgment as of nonsuit. This motion was allowed as to the defendant Cline and the plaintiffs did not appeal. It was thereby judicially determined that the agent did not wrongfully mutilate the body of the deceased. This defendant cannot

be called upon to respond in damages for an act of its agent which was not wrongfully or negligently committed. The judgment of the court below as to Cline is conclusive against the plaintiffs in this action as to both defendants. *Whitehurst v. Elks,* 212 N. C., 97.

Judgment should be entered dismissing the action as to defendant Southern Railway Company.

Reversed.