JAMES W. PRICE AND HERSCHEL C. PRICE, TRADING AS PRICE CON-
STRUCTION COMPANY, v. AL J. GOODMAN.

(Filed 10 April, 1946.)

**1. Courts § 14—**

An action to recover balance due on a contract for the sale and delivery
of goods, consummated in another state, is governed as to its substantive
features by the laws of such other state.

**2. Sales § 13a—**

The Uniform Sales Act has not been adopted in the State of West Vir-
ginia, where the contract in suit was consummated, and therefore the
provisions of that Act in regard to warranties has no application.

**3. Sales § 27—**

Where, in an action to recover the balance due on an executed contract
of sale, defendant sets up a counterclaim for breach of warranty, the
court has the power, upon objection, to limit defendant's evidence on the
issue of damages to those items alleged by him, and recovery on the
counterclaim could not exceed the amount so alleged and demanded.

**4. Contracts § 25a—**

Only those damages may be awarded for a breach of contract which
are within the reasonable contemplation of the parties as a natural and
probable consequence of the breach and which are, therefore, foreseeable.

**5. Same: Sales § 27—**

Special damages, while most frequently applicable to executory con-
tracts, are recoverable in proper cases for breach of executed sales con-
tracts, but in all instances the party sought to be charged must have been
duly informed at the time of making the contract of the circumstances
out of which the damages may arise, and such special damages must be
properly pleaded.

**6. Sales § 27—**

Where, in an action to recover the balance due on an executed contract
of sale, defendant pleads breach of warranty, but fails to plead special
damages and offers no evidence that at the time of making the contract
the seller had knowledge that defendant had a contract to resell, evidence
proffered by defendant to show the loss and amount of the expected profit
from such resale is properly excluded.

**7. Same—**

In this action to recover balance due on executed contract of sale the
issues submitted, without objection by defendant, were (1) the execution
of the contract and the delivery of the goods, answered in the affirmative
by consent, (2) the amount plaintiffs were entitled to recover, and (3)
the amount, if any, defendant was entitled to recover on his counterclaim
for breach of warranty. *Held:* Nothing else appearing, plaintiffs were
*prima facie* entitled to recover the purchase price on the second issue

subject to diminution to its full extent by any recovery by defendant on the third issue, and defendant was not prejudiced by an instruction to answer the second issue. in the amount of the contract price if the jury was satisfied by the greater weight of the evidence of the contract of sale and delivery of the goods thereunder.

**8. Same—**

Breach of warranty in a sales. contract is an affirmative plea, whether as a defense or as ground for recovery of damages, and the seller is not required to anticipate or negative such defense, but the burden is on the purchaser pleading such defense to establish it by the greater weight of the evidence.

**9. Same—**

In this action to recover balance due on an executed sales contract defendant set up a counterclaim for breach of warranty and his evidence on the question of damages relating thereto was not limited except for the exclusion of evidence relating to special damages not pleaded, but the court limited recovery on the issue to the purchase price paid or agreed to be paid. Upon conflicting evidence the jury answered the issue of damages on the counterclaim "nothing." *Held:* Even though the limitation of the recovery might be more applicable to instances where the remedy sought is rescission or offset, in view of the jury's verdict defendant was not prejudiced by such limitation.

APPEAL by defendant from *Warlick, J.,* at August Term, 1945, of BUNCOMBE.

The plaintiffs brought this action to recover the balance due on the purchase price of a quantity of used or second-hand steel road forms, used in the construction of concrete roads. They allege that defendant agreed to pay for them cash on delivery at Huntington and Charleston, West Virginia, at 27½c per lineal foot, for 10,990 feet, and that they were delivered to defendant's trucks and received by him. Subsequently, defendant paid $1,500 on the purchase price, and was credited with twelve of the forms he claimed were unusable, leaving a balance due of $1,489.25.

The defendant answered, partially admitting and partially denying the allegations of the complaint, and setting up as a further defense and counterclaim in which he referred to certain "Blawknox" forms sold to him and averred that "said sale carried an implied warranty that said forms were fit and suitable for the purposes for which they were designed and manufactured, and that same were usable for said purposes as Blawknox forms," whereas they were in fact not so suitable or usable, but had no value except as junk. He therefore pleads a breach of such implied warranty and specifies his damages as a result of the breach to be as follows: $695.21 for transportation of the forms from West Virginia to Camp Claiborne, Louisiana; $1,500 paid on the purchase price,

$156.23 handling charges, totaling $2,351.44, with interest, less a credit of $500, salvage or junk value of the forms. The prayer for judgment is in accord with these alleged items of damages.

To this plaintiffs replied alleging, *inter alia,* that defendant had had the forms in his possession for more than two months without any complaint except as to the twelve forms credited, and had paid $1,500 on the purchase price; that defendant had caused an inspection to be made of the forms before closing the trade, and any defects in them were open, obvious and patent, and denied that there was any warranty, or breach thereof.

On the trial only two witnesses testified: J. W. Price on the part of the plaintiffs, and defendant in his own behalf. This, with exhibits, comprised the evidence.

Plaintiffs' evidence tended to show as follows:

Plaintiffs reside in Huntington, West Virginia, and are engaged in highway and railroad construction. Goodman called J. W. Price, of the firm, on 17 May, 1943, and asked if they had some used concrete road steel forms which they were willing to sell, and Price answered affirmatively. Asked what kind they were, Price informed of their dimensions, and they agreed on a price of 27½c per lineal foot on plaintiffs' lot in West Virginia, where defendant's trucks were to pick them up. (This was confirmed by letter of 18 May, introduced in evidence.)

Defendant offered to send his check as each truck load was picked up, but Price suggested that it might be better to wait until he got all the forms and make one payment for the whole sale, upon which they agreed.

Defendant sent his trucks and hauled away 10,900 feet of steel forms, the subject of the agreement, and plaintiffs sent him an invoice for payment on 10 June. (Invoice was introduced.) On this invoice was credited 12 forms which Goodman had reported as unusable. The invoice showed a balance due of $1,489.25. Mr. Goodman, the witness stated, understood that the forms were used forms and in no way guaranteed. Plaintiffs did not know what they were going to be used for, and nothing was said about what kind they were.

After repeated attempts to get payment for the forms by letter, and by wire, the defendant wrote a letter in which he complained that his man reported that 300 of the forms were not suitable for repair and suggested that he meet Goodman at his office on 25 August. Witness came on 26 August. At that time defendant paid $1,500 on the purchase price.

During the telephone talk referred to, Price and Goodman discussed the necessity of repairs, but Goodman did not say anything about having a customer for the forms. Plaintiffs were willing to sell the equipment because there was no opportunity for any construction work in that part of the country because of the war.

Defendant's testimony was substantially as follows:

Defendant is a resident of Asheville, North Carolina. His business is buying, overhauling, and selling road equipment. He wanted used road forms, and Mr. Price told him he had such forms—Blawknox and Heltzels. He did not have enough of one make. Mr. Price said the forms were in good, fair condition—could be made straight edge. As a result of the conversation he sent his truck drivers after them, put some men to work on them, and shipped 4,000 feet to Campbell Construction Company at Camp Claiborne, La.

(At this point defendant sought to testify that Campbell Construction Co. had agreed to take the forms subject to inspection and pay $3,600 for them, counsel asking for its admission in order to show loss of anticipated profits on this resale. The evidence was not admitted, and defendant excepted.) Witness stated that in his opinion the road forms were "junk" and had no other value.

On cross-examination:

Witness knew a man in Huntington, President of the West Virginia Tractor and Equipment Company, to whom he mentioned that he wanted a complete paving outfit for one job, for Campbell, in Louisiana, and as a result of this called Mr. Price. At his request Mr. Basham sent a man down there to inspect the forms. "After his inspection, he told me what they were and said he preferred that I look at them myself or send one of my own men. . . . That was under my authority. He went there and inspected and then I bought them." He was to get Blawknox, Heltzels, and some Hatcliff.

"Mr. Price said that he had some Blawknox and Heltzels. He said they were in good serviceable condition and Mr. Basham backed that up. . . . He didn't check every one but they looked good, but you can't tell just looking. I took that chance because we were in a hurry for them and needed them. . . . I had to take their word for them."

Defendant further testified that after alterations or additions to some of the forms, he shipped to the Louisiana people about 2,000 feet of forms, "to be in good condition," and on inspection they were refused. He said the forms, if they had been in the condition represented by Mr. Price, would have been worth 60c to 75c per foot to him for resale.

The following issues were submitted to the jury:

"1. Did the plaintiffs and defendant enter into a contract for the sale of certain steel road forms, and did the plaintiffs deliver to the defendant said 10,870 lineal feet of steel road forms at the contract price of 27½c per lineal foot?

"2. If so, what amount are plaintiffs entitled to recover of the defendant?

"3. What amount, if any, is the defendant entitled to recover of the plaintiffs on his counter-claim and/or cross-action filed?"

The first issue was answered by consent "Yes."

On the second issue the jury was instructed, *inter alia,* as follows:

"The burden of that issue is on the plaintiffs. That burden is to satisfy you from the evidence by its greater weight, or by the preponderance of the evidence, but I do peremptorily instruct you that if you find from the evidence and by its greater weight that the plaintiffs did sell to and the defendant did receive from them at the agreed price of 27½c per lineal foot, this 10,870 lineal feet of steel road forms, then if you so find from the evidence and its greater weight, your answer to the second issue would be $2,989.25." Defendant excepted. The issue was answered $2,989.25, upon which, without objection, $1,500 was credited, leaving $1,489.25.

The third issue was answered "Nothing."

From the ensuing judgment defendant appealed, assigned error.

*Smathers & Meekins for plaintiffs, appellees.*
*T. A. Uzzell, Jr., for defendant, appellant.*

SEAWELL, J. On this appeal we are dealing with an executed sales contract and an alleged breach of warranty on the part of the seller. Since the sale was consummated in West Virginia and delivery had there, the case, in its substantive features, is controlled by the West Virginia law. For that reason our references are, for the most part, to works of recognized accuracy and generally accepted rather to our own Reports, citing the latter only when believed to be in accord with West Virginia law and its legal interpretation. The Uniform Sales Act appears not to have been adopted in West Virginia, as it has not been in this State, and the case under review is free from the implications of that Act in the matter of warranties.

For the purpose of this review, the exceptions to the trial may be resolved into three objections: The exclusion of evidence relating to special damages from the loss of expected profits in a transaction alleged to have been pending between the defendant and a customer in Louisiana, and the consequent removal of that element of damages from consideration by the jury; the so-called peremptory instruction to the jury on the second issue relating to plaintiffs' recovery, which defendant contends relieved the plaintiffs from the burden resting upon them to prove the performance of the contract as it applied to them; and application of the rule restricting defendant's recovery of damages upon his counterclaim to the amount of the purchase price of the road forms.

It is important to observe in the beginning that the great latitude given the defendant in presenting his counterclaim to the jury, particularly on the question of damages, and the verdict of the jury on the disputed evidence have rendered most of the complaints of the defendant academic; and extended discussion of them would lead to the pursuit of abstract principles, which it is our purpose to avoid. There are, it is true, many anomalies presented in the case, and perhaps some irregularities, arising for the most part from a departure from the course charted by the pleadings; but they do not necessarily result in reversible error.

The defendant's pleading in setting up his counterclaim is very narrow in its scope, although in the progress of the trial little attention was given to its limitations. Pleading *ad damnum,* he itemizes his damages arising from the alleged breach of warranty, in language purporting. to be comprehensive and inclusive, as $1,500 paid on the purchase price, $695.21 freight charges incurred, and $156.23 handling charges, totaling the damage at $2,351.44; and in an ensuing paragraph again alleges that his damages by reason of the breach were $2,351.44, with interest thereupon. This was in the body of the pleading. It was in the power of the court, and doubtless would have been its duty on objection, to have limited the evidence of defendant to these items, and recovery could not exceed the amount so alleged and demanded. There was no objection, however, except as to the attempted proof of loss of expected profits in the Louisiana transaction; and defendant's evidence, properly excluded on other grounds stated *infra,* is also referable to the above stated principle.

1. Only those damages may be awarded for a breach of contract which are within the reasonable contemplation of the parties as a natural and probable consequence of the breach and which are, therefore, foreseeable. *Troitino v. Goodman,* 225 N. C., 406, 412, 35 S. E. (2d), 277; Williston on Contracts, sec. 1344; Restatement, Contracts, sec. 330. Special or extraordinary damages cannot be recovered unless the person sought to be charged is at the time of making the contract informed of the special circumstances out of which they may probably arise, and they are thus brought within the principle of reasonable foreseeability. *Hadley v. Baxendale,* 9 Ex., 321; *Troitino v. Goodman, supra; Iron Works v. Cotton Oil Co.,* 192 N. C., 442, 135 S. E., 1002. Instances of such special damages are most frequently met with in executory contracts; and especially those relating to transportation, manufacture, repair of machinery, and the like, but such damages in proper cases may be recoverable for breach of an executed sales contract. There are, however, two requisites for recovery—one factual, and the other procedural; as stated above, the parties sought to be charged must have been duly informed at the time of making the contract of the special circumstances

out of which the damage may arise; *Troitino v. Goodman, supra; Raleigh Iron Works v. Cotton Oil Co., supra; Hadley v. Baxendale, supra;* and the fact of such notice and of the special damage must be adequately set forth in the complaint or pleading. Special damages "must be stated and described in the declaration or complaint." Williston on Contracts, sec. 1344A. After stating the rule as to the pleading of general damages, it is said in Southerland on Damages, p. 1365, sec. 419: "If special circumstances existed entitling the purchaser to greater damages because the default defeated a particular purpose known to the contracting parties, they must be stated and also the facts which, under the circumstances, rendered the injury greater." "Special damages are required to be stated in the declaration for notice to the defendant and to prevent surprise at the trial." *Ib.,* p. 1364. See cases under Note 47. In the case at bar it was not so pleaded, and no attempt was made on the trial to show that plaintiffs had any information or knowledge of the Louisiana transaction on which the defendant, somewhat remotely, we think, predicates loss of profit—in fact, there is a clear inference from his testimony that no such notice was given; and there was nothing in his pleading on which such special damage could be based. The objection and exceptions comprised in it are untenable.

2. The defendant excepts to the instruction given to the jury on the second issue relating to the recovery by the plaintiff of the purchase price promised for the forms. The defendant admitted the receipt of the road forms purchased from the plaintiffs, and the purchase price he agreed to pay. Moreover, he permitted this to be embodied in the first issue and consented that the issue should be answered "Yes." Nothing else appearing, the plaintiffs, upon the facts established in that issue, were *prima facie* entitled to recover the purchase price. Without objection, the partial payment which had been made by defendant was credited to him. The amount of plaintiffs' recovery so found was provisional and made subject to diminution to its full extent by any recovery made by defendant in the third issue. The defendant made no exception to the issues as so presented or to their sufficiency to completely determine the controversy; and in view of the result, this was not prejudicial to him.

The objection, however, appears to be that more proof was required of the plaintiffs to entitle them to recover—that the defendant having alleged a breach of warranty, the burden rested upon the plaintiffs to show that they had delivered to the defendant articles free from challengeable defects, or of the quality and fitness such warranty might imply.

Breach of warranty in a sales contract is an affirmative plea, whether as a defense or ground for recovery of damages, and the burden is on one who asserts it to establish it by the greater weight of the evidence.

The plaintiffs were not bound to anticipate or negative the defense or, *imprimis,* to disprove an unproven claim. The objection is without merit.

3. His Honor limited recovery by defendant on his counterclaim to the total amount of the purchase price paid or agreed to be paid. Perhaps such a rule would have been more applicable to some situations met with where the remedy sought is recision or offset connected with the transaction, which defendant's form of pleading and allegation of damage strongly suggest. However, notwithstanding any technical inaccuracy in the rule, since the defendant, on an unrestricted presentation to the jury of all the elements of damage he chose to offer (except the properly excluded special damage attributed to the Louisiana transaction), recovered nothing, the limitation did not affect him. Had the jury reached or endeavored to exceed the limitation set by the court, a different situation might have been presented. Obviously, defendant's difficulty lay with the jury, not with the court.

Our attention is called to the limitations on implied warranty growing out of the fact of inspection. We do not consider it necessary to discuss this or, indeed, other rules which might have constituted a hindrance to the defendant, because no such limitations were imposed upon him in the trial, and no exception brings the subject into question. In fact, technicalities that might have rendered defendant's recovery on his counterclaim more difficult were disregarded, and he was given practically free rein before the jury. There was sharp contradiction between his evidence and that of the plaintiffs, and the evidence of the latter prevailed with the jury.

If there was any prejudicial error in the trial, and we do not conclude that there was, it is not disclosed in the exceptions.

We find

No error.