BLUMMER WADDELL LAMM v. W. W. SHINGLETON, EDWARD E. SHINGLETON, W. W. SHINGLETON, JR., AND GERALD SHINGLETON, T/A HUNT FUNERAL HOME.

(Filed 2 November, 1949.)

**1. Trial §§ 22b, 26—**

Where at the close of plaintiff's evidence, nonsuit is entered on one of the causes of action, that cause is no longer pending, and defendant's evidence thereafter introduced cannot be considered in determining the correctness of the nonsuit.

**2. Dead Bodies § 2½—**

Where, in an action for breach of contract to furnish a watertight vault, plaintiff's evidence tends to show that water and mud entered the vault by reason of the fact that the top was not locked to the base at one end at the time of the original interment, but offers no evidence tending to show that the vault was not waterproof as represented by defendant undertakers, nonsuit is proper, there being no evidence of breach of warranty in the sale of the vault.

**3. Dead Bodies § 1—**

The widow has the primary right to the possession of the body of her deceased husband and to control its burial.

**4. Dead Bodies § 2½—**

Where an undertaker agrees to conduct a funeral, he impliedly covenants to perform the services contemplated in a good and workmanlike manner.

**5. Same—**

Where plaintiff alleges that defendants contracted to conduct the funeral of her husband, and that at the time of interment the top of the vault was not locked to the bottom, so that water and mud entered the vault and forced its top to the surface, the action is for breach of contract, and further allegations that such failure was negligent and careless does not convert it into an action in tort.

**6. Contracts § 25a—**

Damages recoverable for breach of contract are those which are the direct, natural and proximate result of the breach and which, in the ordinary course of events, could have been reasonably foreseen by the parties at the time of the execution of the contract.

**7. Same—**

In commercial contracts, mental anguish and suffering by reason of the breach thereof are ordinarily not recoverable, since they are deemed too remote to have been in the contemplation of the parties at the time of its execution.

**8. Same—**

Where a contract is personal and so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the

duty is owed, that mental anguish can reasonably be anticipated .as a result of its breach, compensatory damages for mental suffering may be recovered.

**9. Dead Bodies § 2½—**

Where a widow alleges breach of contract by defendants to conduct the funeral of her husband in failing to lock the top of the vault to its base so that water and mud seeped into the vault and forced its top to the surface, causing her shock which injured her health when she viewed the scene, compensatory damages for such suffering may be recovered.

**10. Contracts § 25a—**

Where the breach of a personal contract results in shock or fright which impairs plaintiff's health, there is a physical injury entitling plaintiff to compensatory damages regardless of whether the breach amounted to a willful or independent tort.

**11. Dead Bodies § 2½—**

This action was instituted against undertakers for breach of contract to conduct the funeral of plaintiff's husband, plaintiff alleging that the top of the vault was not locked to its base at the time of interment so that water and mud seeped into the vault. Defendants' evidence was to the effect that they were without authority to make actual interments under the rules and regulations of the cemetery authorities, but that the interments were made exclusively by the cemetery authorities. *Held:* Defendants' evidence raised matters of defense for the consideration of the jury and does not compel judgment of nonsuit.

SEAWELL, J., dissenting.

APPEAL by plaintiff from *Morris, J.,* February Term, 1949, WILSON. New trial.

Civil action bottomed on two alleged causes of action: (1) for damages for breach of contract to conduct the funeral and inter the body of plaintiff's deceased husband, and (2) for damages for breach of warranty in the sale of a vault.

Plaintiff's first husband, Larry Waddell, died 3 August, 1946. She employed the defendant undertakers to conduct the funeral and purchased from them a casket and vault. The vault was composed of two sections: a base on which the casket rested and a metal cover or lid which fitted over the casket and locked to the base with ratchet locks at each end. The defendants represented and warranted that it was watertight and would protect the body from water for years.

On Wednesday before Thanksgiving Day, plaintiff discovered that the vault, during a very rainy spell of weather, had risen above the level of the ground, the top of one end being about six inches above the ground level. She reported the condition to defendants and to the cemetery authorities. Defendants (or the cemetery authorities) undertook to reinter the body.

On the following Saturday, employees of defendant and of the cemetery authorities met at the grave for the purpose of placing the vault in an adjoining grave prepared for that purpose. Plaintiff was present. When the vault, including the base, was raised, it was discovered that water and mud had entered it, and the casket was wet.

The plaintiff offered evidence tending to show that the vault was not locked and had not been locked at the time of the original interment. The defendants contended and offered evidence tending to show that the vault was securely locked, that to remove the vault from the original grave it was necessary to use a lever to prize it out, that the lever slipped, struck the top or lid, and dislodged the locks at one end, permitting the water and mud to enter at that time.

Plaintiff testified that "seeing the vault out of the ground that first time" caused her considerable shock and made her extremely nervous as a result of which she became a nervous wreck. She also testified that while the men were about the grave after a discussion about getting the mud out of the vault, defendant Shingleton said he was not going to get it out and "To hell with the whole damned business, it's no concern of mine," and that this language made her so nervous she could hardly stand up.

The defendants offered evidence tending to show that under the rules of the cemetery association they were forbidden to inter the body or to remove the vault and that the original interment and the reinterment were made by the cemetery authorities.

When the plaintiff rested, the court dismissed the cause of action for damages for breach of warranty but overruled the motion to dismiss the action for breach of contract to inter. At the conclusion of all the evidence, the court again denied the motion to dismiss the action and submitted issues to the jury. The first issue, to wit, "1. Did the defendants by their unlawful, willful negligence and carelessness in the burial of the body of the husband of the plaintiff cause plaintiff to suffer injury and damages, as alleged?", was answered "no." From judgment that plaintiff take nothing she appealed.

*Sharpe & Pittman, Connor, Gardner & Connor, and Robert A. Farris for plaintiff appellant.*

*Lucas & Rand and Z. Hardy Rose for defendant appellees.*

BARNHILL, J. All the testimony offered by plaintiff tends to show that water and mud entered the vault by reason of the fact the top was not locked to the base at one end at the time of the original interment. She offered no testimony tending to prove that it was not waterproof as represented by defendants.

It is true the evidence offered by defendants is to the effect the vault was securely locked. On this record, however, that testimony is not available to plaintiff on the cause of action for breach of warranty and may not be considered on the question of nonsuit of that cause of action. At the time it was offered, judgment of nonsuit had been directed, and so that cause was not pending and at issue. As the nonsuit was entered when plaintiff rested, the correctness of the ruling of the court below is to be determined by a consideration of her evidence only. As she offered no proof that the vault was not waterproof when properly locked to the base, the ruling must be sustained.

Indeed, plaintiff's primary cause of action is grounded on the theory that the vault was not locked at one end. On this record the base of the vault was not dislodged and did not rise. Only one end of the top was forced up by water which entered at the unlocked end. This and the condition thereby produced, as alleged by her, is the basis of her claim to damages for breach of contract of burial.

The first issue submitted required the jury to find that plaintiff's alleged injuries resulted from the "unlawful, willful negligence and carelessness" of defendants. The charge of the court on this issue was to like effect. In the submission of the issue and in the charge thereon there was error.

On the death of a husband, the primary right to possession of the body and to control of burial is in the widow. 15 A.J. 839, 847; Anno. L.R.A. 1915B 519. She may maintain an action for mutilation of the body. *Stephenson v. Duke University,* 202 N.C. 624, 163 S.E. 698; *Morrow v. Cline,* 211 N.C. 254, 189 S.E. 885; *Morrow v. R. R.,* 213 N.C. 127, 195 S.E. 383; *Gurganious v. Simpson,* 213 N.C. 613, 197 S.E. 163. But here no mutilation is alleged.

This is essentially an action for damages for breach of contract. Plaintiff alleges a contract to furnish a casket and watertight vault and conduct the funeral and inter the body, the breach thereof by failure to lock the vault, and damages resulting from the breach. The further allegation that the defendants' failure to lock the vault at the time of the burial, as a result of which water and mud entered the vault and forced its top to the surface, was due to their negligence and carelessness does not convert it into an action in tort.

The defendants held themselves out as specially qualified to perform the duties of an undertaker. When they undertook to conduct the funeral of plaintiff's deceased husband they impliedly covenanted to perform the services contemplated by the contract in a good and workmanlike manner. Any breach of the duty thus assumed was a breach of the duty imposed by the contract and not by law.

· So then, the primary question posed for decision is this: Is. mental anguish an element of damages to be considered by the jury in an action for the breach of the contract alleged and, if so, must plaintiff show that the breach amounted to a willful tort?

: "A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for all injuries and only such injuries as are the direct, natural, and proximate result of the breach or which, in the ordinary course of events, would likely result from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract as a probable or natural result of a breach . . ." 15 A.J. 449, sec. 51; 25 C.J.S. 441, sec. 24; *Troitino v. Goodman,* 225 N.C. 406, 35 S.E. 2d 277; *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592; *Chesson v. Container Co.,* 216 N.C. 337, 4 S.E. 2d 886; *Monger v. Lutterloh,* 195 N.C. 274, 142 S.E. 12.

Even so, contracts are usually commercial in nature and relate to property or to services to be rendered in connection with business or professional operations. Pecuniary interest is dominant. Therefore, as a general rule, damages for mental anguish suffered by reason of the breach thereof are not recoverable. Some type of mental anguish, anxiety, or distress is apt to result from the breach of any contract which causes pecuniary loss. Yet damages therefor are deemed to be too remote to have been in the contemplation of the parties at the time the contract was entered into to be considered as an element of compensatory damages. McCormick on Damages 592, sec. 145; 15 A.J. 599, sec. 182; Anno. 23 A.L.R. 372, 44 A.L.R. 428, 56 A.L.R. 659.

The rule is not absolute. Indeed, the trend of modern decisions tends to leave it in a state of flux. Some courts qualify the rule by holding that such damages are recoverable when the breach amounts in substance to a willful or independent tort or is accompanied by physical injury. 15 A.J. 599, 603; *Hall v. Jackson,* 134 P. 151. Still others treat the breach as an act of negligence and decide the question as though the action were cast in tort, and thus confuse the issue. Thus, to some extent the courts have modified the common law rule.

In this process of modification a definite exception to the doctrine has developed. Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered. 15 A.J. 600; McCormick on Damages 592; *Warner v. Allen,* 34 A.L.R. 1348. In such case the

party sought to be charged is presumed to have contracted with reference to the payment of damages of that character in the event such damages should accrue on account of his breach of the contract. *Renihan v. Wright,* 25 N.E. 822 (Ind.) ; McCormick on Damages 595.

Thus we have held that such damages may be recovered in an action for breach of contract of marriage, *Allen v. Baker,* 86 N.C. 91, 41 Am. Rep. 444; Anno. 41 L.R.A. ns 842, and for breach of contract to transmit a death message, *Russ v. Telegraph Co.,* 222 N.C. 504, 23 S.E. 2d 681; *Johnson v. Telegraph Co.,* 175 N.C. 588, 96 S.E. 36; *Betts v. Telegraph Co.,* 167 N.C. 75, 83 S.E. 164, when the meaning or import of the message and the interest of the addressee or beneficiary of the contract is made known to the telegraph company at the time the message is accepted for transmittal. *Thomason v. Hackney,* 159 N.C. 299, 74 S.E. 1022.

The tenderest feelings of the human heart center around the remains of the dead. When the defendants contracted with plaintiff to inter the body of her deceased husband in a workmanlike manner they did so with the knowledge that she was the widow and would naturally and probably suffer mental anguish if they failed to fulfill their contractual obligation in the manner here charged. The contract was predominantly personal in nature and no substantial pecuniary loss would follow its breach. Her mental concern, her sensibilities, and her solicitude were the prime considerations for the contract, and the contract itself was such as to put the defendants on notice that a failure on their part to inter the body properly would probably produce mental suffering on her part. It cannot be said, therefore, that such damages were not within the contemplation of the parties at the time the contract was made. *Wright v. Beardsley,* 89 P. 172; *Renihan v. Wright, supra; Burrus v. Ry.,* 145 P. 926; *Fitzsimmons v. Olinger Mortuary Ass'n.,* 17 P. 2d 535; *Hall v. Jackson, supra; Brown Funeral Homes v. Baughn,* 148 So. 154; *Loy v. Reid,* 65 So. 855; *Dunn v. Smith,* 74 S.W. 576; McCormick on Damages 592, sec. 145; 15 A.J. 601.

On this record the "willful and intentional tort" doctrine, even if we should be disposed to adopt it in a proper case, does not apply here so as to bar recovery for the reason that, with us, impairment of health proximately resulting from a state of nervousness, produced by shock and fright, constitutes a physical injury. *Kimberly v. Howland,* 143 N.C. 398; *Kirby v. Stores Corp.,* 210 N.C. 808, 188 S.E. 625; *Sparks v. Products Corp.,* 212 N.C. 211, 193 S.E. 31.

The defendants offered evidence tending to show that the cemetery in which the interment was made is the property of the City of Wilson and that under the rules and regulations of the cemetery authorities interments are made exclusively by agents or employees of the city; that while undertakers conduct funerals they are not permitted to and do not make

the actual interment; that they lower the casket or vault into the open grave and leave the rest to the municipal authorities as they are required to do. These are matters in defense which, on proper evidence thereof, must be considered by the jury. In the light of plaintiff's testimony, they do not compel judgment of nonsuit.

The court below erred in submitting the quoted issue and in its charge thereon. It is therefore necessary that the cause be remanded for trial upon the issues raised by the pleadings. It is so ordered.

New trial.

SEAWELL, J., dissenting: I think the case should be sent back for retrial but not with the restrictions and limitations on plaintiff's cause of action which I find *in ratione decidendi* of the main opinion.

I think the vault used in the burial undertaken by the defendants should be regarded as an accessory to the burial contracted for and undertaken by defendants and not as a separate sales transaction in which the contract, with its warranty, might be performed by delivery *in its* unassembled state.

The defendants are not relieved from liability by reason of the fact that plaintiff did not show that the vault was not watertight when properly locked.

The contract was one of burial in which the defendants undertook to bury the body of plaintiff's husband in this particular vault. Its potentialities as a watertight vault were useless and unavailable for the purpose for which the vault was intended until the top was locked to the base. The nature of the contract, and plaintiff's evidence put this duty on the defendants and they failed to discharge it. By reason of that fact water and mud soaked the body and plaintiff is entitled to recovery for the breach of the contract, made specifically to prevent that occurrence, and the consequent and ensuing mental suffering, if the jury should so find.

The gravamen of the plaintiff's action does not rest in a claim that the burial was not done in a workmanlike manner,—that is entirely too narrow;—it lies in the breach of the specific contract to bury her husband's body in a watertight vault, selected for the purpose; *a vault watertight at the time of the burial,* by proper assembly of its parts, by locking of the top to the base, if necessary to make it perform the intended function,—and it was. This has nothing to do with the way defendants "held themselves out as specially qualified to perform the duties of an undertaker" or the corollary statement in the opinion of the Court: "When defendants undertook to conduct the funeral of plaintiff's deceased husband they impliedly covenanted to perform the services contemplated by the contract in a good and workmanlike manner." That exists, of course,

but it cannot be used to exclude the specific obligation of the contract, to wit: To bury the body in a specific way, in a watertight vault. Yet, of this, in discussing the nonsuit, the Court, in its opinion, observes: "As she offered no proof that the vault was not waterproof when properly locked to the base the ruling must be sustained." Thus plaintiff's main cause of action is dismissed by nonsuit, and another, upon which she did not declare, and in which there are plenty of hurdles, is handed to her for prosecution. I question,—not the power of the Court, of course—but the propriety of that action.