LINDSEY LEO SMITH AND WIFE, EUDELL SMITH v. POWELL FUNERAL HOME

No. 8113SC115

(Filed 6 October 1981)

**Dead Bodies § 2— breach of contractual duty to perform burial in workmanlike manner — summary judgment improper**

In an action by plaintiffs to recover for mental anguish resulting from the manner in which their deceased son was buried by defendant, where, based upon the forecast of evidence, the jury could find that the defendant was responsible for the digging of the grave, that the grave site was of uneven grade and the grave was dug so that the joint between the box and the top of the vault was exposed above ground at one point, that gases from inside the vault were thereby able to escape through the seal to the open air resulting in an odor and the attraction of flies, that this was not a proper practice, and that the defendant thereby breached its contractual duty to perform the burial in a good and workmanlike manner, entry of summary judgment for defendant was improper.

APPEAL by plaintiffs from *Braswell, Judge.* Judgment entered 6 November 1980 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 3 September 1981.

Plaintiffs instituted this action to recover for mental anguish resulting from the manner in which their deceased son was buried by the defendant. Plaintiffs alleged that they contracted with the defendant to inter the body of their son, that defendant breached the contract by failing to bury their son's body in a good and workmanlike manner, and that some months after the burial they found a strong odor and a large number of flies around the grave. Defendant filed answer, denying the material allegations of the complaint. Discovery was conducted and the defendant then moved for summary judgment. Summary judgment was allowed the defendant and the plaintiffs appeal.

*Walton, Fairley & Jess, by Ray H. Walton and Elva L. Jess, for plaintiff-appellants.*

*Powell and Smith, by William A. Powell, for defendant-appellee.*

ARNOLD, Judge.

The principles applicable to consideration of summary judgment motions are well established. The moving party has the burden of clearly establishing the lack of any triable issue of fact. The papers supporting the movant's position are to be carefully scrutinized while those of the opposing party are to be regarded indulgently. The motion may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Yount v. Lowe,* 288 N.C. 90, 215 S.E. 2d 563 (1975); *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795 (1974); *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). In order for a defendant's motion for summary judgment to be granted, the defendant must produce a forecast of the evidence which he has available for presentation at trial which is sufficient, if considered alone, to compel a verdict in favor of defendant as a matter of law. Failure of the plaintiff to counter the effect of defendant's forecast by his own forecast of evidence sufficient to create a genuine issue of material fact will result in a judgment against him. The test is whether plaintiff has presented evidence sufficient to survive a motion for a directed verdict if such evidence were offered at trial. *Cockerham v. Ward* and *Astrup Co. v. West Co.,* 44 N.C. App. 615, 262 S.E. 2d 651, *disc. review denied,* 300 N.C. 195, 269 S.E. 2d 622 (1980).

The law with respect to an undertaker's liability for breach of a contract of burial has also been addressed in North Carolina. In *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E. 2d 810 (1949), the plaintiff alleged that defendant undertakers' failure to lock the vault in which they buried the plaintiff's deceased husband resulted in water and mud entering the vault and forcing it to the surface. In the course of holding that the plaintiff's action was properly based on contract rather than tort law, our Supreme Court wrote:

> The defendants held themselves out as specially qualified to perform the duties of an undertaker. When they undertook to conduct the funeral of plaintiff's deceased husband they impliedly convenanted to perform the services contemplated by the contract in a good and workmanlike manner. Any breach of the duty thus assumed was a breach of the duty imposed by the contract and not by law.

*Id.* at 13, 55 S.E. 2d at 812. With these principles in mind, we now turn to the forecast of evidence presented at the hearing on the defendant's motion for summary judgment in this case.

Defendant presented several depositions in support of its motion. The plaintiffs relied upon these same depositions and presented one affidavit. These materials tended to show the following: The defendant is a family business operated by Gerald E. Powell, his brother Michael Dixon Powell, and their mother. The plaintiffs' son Jerry Smith was killed in an accident on 31 October 1977. The family made funeral arrangements with Michael Powell and selected a casket and vault. The family decided upon a surface burial in which the top of the vault would be exposed above the ground. There are different types and grades of caskets, and the one selected in this case was not air tight. There was testimony that Michael Powell told the *feme* plaintiff that the vault selected for this burial had a fifty year warranty, but he denied this. Defendant ordered the vault from Wilbert Burial Vault Company in Lumberton. W. Marshall Ouzts is president of a company that has a franchise from Wilbert Burial Vault Company to manufacture and sell vaults, and his company supplied the vault to the defendant. The vault used for this burial was guaranteed by Ouzts but was not covered by the Wilbert warranty. The box portion of the vault was made of reinforced concrete and was 26 inches high. The vault was not designed for surface burial; however, Ouzts had designed and manufactured a top for this vault so that it could be used for surface burial. Wilbert Burial Vault Company had not approved the modification that Ouzts made in the vault top. The top that Ouzts designed looked like a flat concrete slab over the grave. It was 7½ inches high on the sides and was heavier than the top ordinarily used with this vault box, but it was otherwise the same. Ouzts explained that there was a tongue and groove joint where the vault top fitted onto the box and that a butyl sealer was placed in the joint to make it "hermetically sealed."

The defendant was responsible for digging the grave. The vault company placed the vault box in the grave and placed the sealer and top on the vault. Ouzts asserted that his company worked under the general supervision of the defendant, but the Powell brothers indicated that the vault company was responsible for installing the vault and that they had no control over it. Ouzts

asserted that he advised funeral directors to dig the grave to a depth of 29 inches for a burial of this type but that the final decision as to the depth of the grave was a matter for the family and the funeral director to decide. The family did not give any instructions as to how deep the grave should be in this case. The Powell brothers stated that they made the decision as to the depth of this grave and that it was approximately 29 inches deep. Neither the family nor the vault company questioned the depth of the grave. Plaintiffs' son was buried on 3 November 1977. Gerald Powell asserted that he did not examine the seal. Michael Powell stated that the vault appeared to be placed and closed to his satisfaction.

A one- to two-foot area around the grave caved in following a heavy rain shortly after the burial, and the family had it filled up with sand. The family did not become concerned until on or about 9 July 1978 when the plaintiffs noticed flies and an odor about the grave. Gerald Powell was called to the scene the following day, and he told the *feme* plaintiff that there was definitely something wrong. He put more dirt and grass around the grave and contacted Ouzts. The vault was subsequently removed and the body was reinterred in a new vault at no cost to the plaintiffs. Neither Ouzts nor Gerald Powell could remember whether the grave was made deeper. Ouzts stated that he examined the original vault and that he found that it was not defective and that it had been sealed. Other testimony indicated a difference of opinion among the persons at the scene as to whether there was sufficient sealer at one point of the vault joint. Further, in the deposition of Ouzts we find the following:

> The cemetery lot where this grave was was not level and a part of the seam between the base and the cover was exposed to the air on the low side before we started digging it up. If the flat surface, the top of that cover was exposed to the sun, and if the grade of the ground was such that on the low side of that slope the seam between the cover and the base was exposed to the air, it would not, in my opinion, have been unusual for gases to escape from the inside of that vault to the outside air through the seal because body gases have got to go somewhere. So far as I know, and from my experience, there are body gases within a vault simply as a result of the natural decomposition of the body inside. If that

seam is exposed it's not unusual for those gases to work through the seal to the outside air I wouldn't think. There would, of course, be an odor attributed to such gases once they are in the outside air.

As to the proper method of burial, Ouzts stated that he did not know whether it was accepted practice to cover the joint between the vault box and top or to leave it exposed to the air. He stated that "the way the family wants [the funeral director] to do it is between them." The *homme* plaintiff stated in his affidavit "that he assumed that the type of burial that he and his wife discussed would be satisfactory and that no odors would be emitting therefrom; that he is not at all familiar with body interment practices and was relying entirely on Powell Funeral Home, who had made other similar interments, to take care of the details." Michael Powell acknowledged that the only information the family had about the vault was what he told them and that he did not tell them that there was a danger of an odor coming from the grave if this vault was used for a surface burial. Gerald Powell asserted in his deposition that he "would not consider it a proper practice" to inter a body so that offensive odors would escape from the grave or flies would be attracted to it. Defendant has had a problem with one other surface burial in a vault similar to that used in this case. Defendant now buries these vaults below the ground and puts a separate slab on top if the family wants the grave to look like a surface burial. Ouzts' company is now making holes in the bottom of vaults used for surface burials so that the escaping gases can pass out through the bottom and be filtered through the ground.

Based upon the above forecast of evidence, a jury could find, among other possibilities, that the defendant was responsible for the digging of the grave, that the grave site was of uneven grade and the grave was dug so that the joint between the box and the top of the vault was exposed above ground at one point, that gases from inside the vault were thereby able to escape through the seal to the open air resulting in an odor and the attraction of flies, that this was not a proper practice, and that the defendant thereby breached its contractual duty to perform the burial in a good and workmanlike manner. The defendant failed to establish the absence of triable issues of fact in this case. Summary judg-

ment should not have been allowed the defendant, and we reverse it and remand the matter for trial before a jury.

Reversed and remanded.

Judges VAUGHN and WEBB concur.